1

**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)

2
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)

3
Email: fschmidt@bollaw.com
222 N. Sepulveda Blvd., Suite 2222

4
El Segundo, California 90245
Tel: (310) 322-2220

5
Fax: (310) 322-2228

6
**BALTODANO & BALTODANO LLP**

7
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com

8
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com

9
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401

10
Tel: (805) 322-3412
Fax: (805) 322-3413

11

Attorneys for Plaintiffs, the Class,

12
and Aggrieved Employees

13

14
**UNITED STATES DISTRICT COURT**

15
**CENTRAL DISTRICT OF CALIFORNIA**

16

17
BARBARA ANN MORAWSKI and

18
JOSE L. CORTEZ as individuals and on
behalf of all others similarly situated,

19

20
                         Plaintiffs,

21
          vs.

22
A.J. SPURS RESTAURANT – SANTA
MARIA, INC., a California Corporation;

23
A.J. SPURS – BUELLTON, INC., a
California Corporation; A.J. SPURS –

24
TEMPLETON, INC., a California
Corporation; MILT GUGGIA

25
ENTERPRISES, INC., dba A.J. SPURS

26
SALOON & DINING HALL, a California
Corporation; and DOES 1 through 10,

27

28
                         Defendants.

Case No.  CV13-2349 AB (RZx)

**PLAINTIFFS' NOTICE OF
MOTION AND MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF**

Judge:  Hon. André Birotte Jr.
Date:    November 10, 2014
Time:    10:00 a.m.
Dept.:   690

---

1

NOTICE IS HEREBY GIVEN that on Monday, November 10, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 790 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012-3332, before the Honorable André Birotte Jr., Plaintiffs Barbara Ann Morawski and Jose L. Cortez ("Plaintiffs") as individuals and on behalf of all others similarly situated, will and hereby do move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Finally certifying the Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Granting final approval to the class action settlement based upon the terms set forth in the Joint Stipulation of Class Action Settlement ("Settlement Agreement") as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

3. Appointing Plaintiffs as Class Representatives for settlement purposes;

4. Appointing Hernaldo J. Baltodano of Baltodano & Baltodano LLP and Paul K. Haines of Boren Osher & Luftman, LLP as Class Counsel for settlement purposes;

5. Entering final judgment in the form of the proposed Final Approval Order filed herewith.

///
///
///
///
///
///
///
///

2

1   This Motion is based upon this Notice, the attached Memorandum of Points

2   and Authorities, the supporting Declarations of Hernaldo J. Baltodano, Paul K.

3   Haines, Barbara Ann Morawski, Jose L. Cortez and Ani Shirinian and exhibits

4   attached thereto, the proposed Order, the Settlement Agreement, all other pleadings

5   and papers on file in this action, and any oral argument or other matter that may be

6   considered by the Court.

7                                    Respectfully submitted,

8   Dated:  October 9, 2014          BALTODANO & BALTODANO LLP

9

10              By:   _/s/Hernaldo J. Baltodano_____

11                    Hernaldo J. Baltodano, Esq.

12                    Attorneys for Plaintiffs, the Class and
                      Aggrieved Employees

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION ..................................................................1

II. FACTUAL SUMMARY .........................................................2

    A. Plaintiffs' Claims ...........................................................2

    B. This Litigation's Procedural History .......................................4

    C. The Parties' Discovery and Analysis......................................4

III. THIS SETTLEMENT WARRANTS FINAL APPROVAL ............................5

    A. The Settlement Is Fair, Adequate, and Reasonable...................................6

        1. The Strength of Plaintiffs' Case .......................................7

        2. Risk, Expense, Complexity, and Duration of Further Litigation.....9

        3. Risk of Maintaining Class Action Status .........................................9

        4. Amount Offered in Settlement Is Reasonable Given the Realistic
           Value of the Claims In Light of the Litigation Risks....................10

        5. Discovery Completed and the Status of Proceedings ...................11

        6. The Experience and Views of Counsel .........................................12

        7. The Reaction of the Class Members to the Proposed Settlement ..12

IV. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS
    PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED........13

V. THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS ...13

VI. CONCLUSION..................................................................15

**TABLE OF AUTHORITIES**

**Federal Cases**

*Churchhill Village, L.L.C. v. General Electric*
    361 F.3d 566, 575 (9th Cir. 2004) ................................................................14

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268, 1276 (9th Cir. 1992) ...............................................................5

*Compare Murillo v. Pacific Gas & Electric Co.*
    266 F.R.D. 468, 477-478 (E.D. Cal. 2010) ......................................................6

*Eisen v. Carlisle & Jacqueline*
    417 U.S. 156, 173 (1974) ...............................................................................13

*Elliot v. Spherion Pacific Work, LLC*
    572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) .............................................8

*In re Heritage Bond Litig.*
    546 F.3d 667, 674 (9th Cir. 2008) ....................................................................5

*In re Pacific Enterprises Securities Litigation*
    47 F.3d 373, 378 (9th Cir. 1995) ....................................................................12

*In re Syncor ERISA litigation*
    516 F.3d 1095, 1101 (9th Cir. 2008) ................................................................5

*Linney v. Cellular Alaska Partnership*
    151 F.3d 1234, 1242 (9th Cir. 1998) ..............................................................10

*Lynn's Food Stores, Inc. v. United States*
    679 F.2d 1350, 1353 (11th Cir. 1982) ..............................................................5

*Marshall v. Holiday Magic, Inc.*
    550 F.2d 1173, 1178 (9th Cir. 1977) ..............................................................12

*National Rural Tele. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523, 526 (C.D. Cal. 2004)......................................................8, 12

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) ........................................................................6, 7

*Villacres v. ABM Industries, Inc.*
    384 Fed.Appx. 626 (9th Cir. 2010) ................................................................8

**Federal Statutes and Rules**

Fed. R. Civ. Proc. 23(e) ..............................................................................................5

**State Statutes and Rules**

8 Cal. Code of Regulations § 13520 ..........................................................................7

Cal. Labor Code § 2699(e)(2) ...................................................................................8

**Unpublished Cases**

*Barbosa v. Cargill Meat Solutions Corp.*
    Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13
    (E.D. Cal. July 2, 2013) .......................................................................11

*Barcia v. Contain-A-Way, Inc.*
    Case No. 07cv938-IEG-JMA, 2009 WL 587844 at *5
    (S.D. Cal. Mar. 6, 2009) .......................................................................13

*Casique v. ValleyCrest Landscape Development, Inc.*
    Case No. CV09-9114 GHK (SSx)
    (C.D. Cal. November 2, 2011)................................................................10

*Chu v. Wells Fargo Investments, LLC*
    Case No. C 05-4526 MHP, C 05-7924 MHP,2011 WL 672645 at *1
    (N.D. Cal. February 16, 2011).................................................................7

*Gribble v. Cool Transports Inc.*
    Case No. CV 06-04863 GAF SHX, 2008 WL 5281665 at *9
    (C.D. Cal. December 15, 2008)................................................................12

1   *In re Portal Software, Inc. Securities Litig.*
2       Case No. C-03-5138 VRW, 2007 WL 4171201 at *3
3       (N.D. Cal. November 26, 2007) ........................................................9
4   *Jaime v. Standard Parking Corp.*
5       Case No. CV08-04407 AHM (Rzx)
6       (C.D. Cal. June 22, 2011) ..............................................................10
7   *Lazarin v. Pro Unlimited, Inc.*
8       Case No. C11-03609 HRL, 2013 WL 3541217 at *2
9       (N.D. Cal. July 11, 2013).................................................................7
10  *Mora v. Bimbo Bakeries USA, Inc.*
11      Case No. CV 10-3748 JAK (RZx)
12      (C.D. Cal. April 16, 2012) .............................................................10
13  *Rodriguez v. D.M. Camp & Sons*
14      Case No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927 at *4
15      (E.D. Cal. May 15, 2013) ...............................................................13
16  *Schiller v. David's Bridal, Inc.*
17      Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17
18      (E.D. Cal. June 11, 2012) .........................................................11, 13
19  *Sorenson v. PetSmart, Inc.*
20      Case No. 2:06-CV-02674-JAM-DAD
21      (E.D. Cal. December 17, 2008) ......................................................10
22  *Williams v. Centerplate, Inc.*
23      Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC,
24      2013 WL 4525428 at *4
25      (S.D. Cal. August 26, 2013) ...........................................................11
26  *Willner v. Manpower Inc.*
27      Case No. C 11-02846 JSW, 2012 WL 1570789 at *7
28      (N.D. Cal. May 3, 2012).................................................................8

1

*Wren v. RGIS Inventory Specialists*

    Case No. C-06-05778 JCS, 2011 WL 1230826 at *10

    (N.D. Cal. April 1, 2011).................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION.

Plaintiffs Barbara Ann Morawski and Jose L. Cortez ("Plaintiffs") seek final approval of this class action settlement on behalf of approximately 362 current and former hourly non-exempt employees of Defendants A.J. Spurs Restaurant – Santa Maria, Inc., A.J. Spurs – Buellton, Inc., A.J. Spurs – Templeton, Inc., and Milt Guggia Enterprises, Inc. ("Defendants") who worked at Defendants' four restaurant locations throughout California from April 2, 2009 to July 8, 2014. This settlement resolves disputed claims for meal and rest period violations, unpaid overtime wages, and derivative statutory and civil penalties based on Defendants' allegedly unlawful meal and rest period practices, and alleged miscalculation of the regular rate of pay for overtime purposes, and provides for substantial monetary payments averaging $1,031.25 to be paid to the members of the Settlement Class. Not a single class member objected to any terms of the settlement, and the average class member recovery exceeds the average recovery in other, similar wage and hour class action settlements.

In its July 8, 2014, order granting preliminary approval, this honorable Court concluded that the settlement fell within the range of reasonableness and, therefore, met the requirements for preliminary approval. *See* Docket Entry ("DE") No. 20 at 2:9-12.  The Court certified the following settlement class under Rule 23(e): All non-exempt, hourly employees who were employed by Defendants in California at any time from April 2, 2009 to July 8, 2014.  *Id.* at 2:16-18.

Notice of the proposed settlement was provided on August 18, 2014 via first class mail to the Settlement Class.   Approximately 30% of the members of the Settlement Class submitted valid claim forms, claiming approximately 35% of all available settlement funds.  However, because the Settlement provides for a minimum payout of 50% of the funds available to the Settlement Class, all participating Settlement Class members will receive a proportionate increase to

1

1   their settlement shares so that 50% of the available funds are paid out.  Only 3

2   Settlement Class members (approximately 0.8%) elected to opt-out of the

3   settlement.  In light of the favorable recovery for the Settlement Class and positive

4   response received from the Settlement Class, Plaintiffs respectfully request that the

5   Court grant final approval.

6   **II.     FACTUAL SUMMARY.**

7           **A.     Plaintiffs' Claims.**

8           Defendants operate four western-themed restaurants in California's Central

9   Coast region, located in the cities of Buellton, Grover Beach, Santa Maria and

10  Templeton.  As a benefit of employment, Defendants provide their hourly non-

11  exempt employees, including Plaintiffs, with free or reduced-price meals during

12  their shifts.  However, Defendants do not include the value of these meals in

13  calculating non-exempt employees' overtime rates of pay, which Plaintiffs assert

14  resulted in a company-wide miscalculation of non-exempt employees' overtime

15  rates and a systematic underpayment of overtime wages under California and

16  Federal law.  Plaintiffs also asserted that Defendants failed to provide all rest

17  periods by maintaining and implementing a facially unlawful rest period policy

18  that failed to give effect to the "major fraction" language of Industrial Welfare

19  Commission Wage Order 5-2001 ("Wage Order 5").  In addition, Plaintiffs

20  maintained that Defendants failed to provide all required meal periods by forcing

21  non-exempt employees to sign an unlawful period meal period waiver that required

22  advance notice for revocation, in violation of Wage Order 5.  Despite their failure

23  to provide compliant meal periods, Plaintiffs asserted, Defendants failed to pay the

24  required premium pay under Labor Code § 226.7.  Plaintiffs further alleged that

25  non-exempt employees were required to purchase slip-resistant shoes without

26  reimbursement.

27          Because of these predicate violations, Plaintiffs maintained that Defendants

28  failed to comply with their final payment and wage statement obligations, in

---

2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1  violation of Labor Code §§ 203 and 226.  Moreover, in addition to statutory

2  penalties, Plaintiffs sought civil penalties under PAGA, Labor Code § 2698 *et seq.*

3          Defendants strenuously denied Plaintiffs' claims.  Among other things,

4  Defendants maintained that they properly calculated and paid all required overtime

5  wages, and that the amount of overtime hours worked was miniscule, rendering

6  any underpayment *de minimis*.  Defendants also maintained that they need not

7  include the value of free or discounted meals in the regular rate of pay for overtime

8  purposes, and that any failure to do so was inadvertent.  Defendants also claimed

9  that they complied with all of their meal and rest period obligations, and that their

10 time records would demonstrate that Plaintiffs and the putative class members

11 were provided with the opportunity to take all meal and rest periods to which they

12 were entitled.   In this regard, Defendants asserted that they rolled out facially

13 compliant rest period policies at some of their restaurants, and that Plaintiffs would

14 face an uphill battle on certification since rest periods need not be recorded.

15 Consequently, Defendants claimed, individual questions of fact would predominate

16 regarding the reasons why employees would have missed their rest periods.   With

17 respect to meal periods, Defendants asserted that the vast majority of shifts were

18 less than six hours in length and, hence, meal periods could be voluntarily waived,

19 irrespective of whether the meal period waiver policy language required advance

20 notice for revocation.   Defendants also asserted that they need not reimburse non-

21 exempt employees for required slip resistant shoes, since they are generally usable

22 in the occupation.   Consequently, Defendants asserted that Plaintiffs could not

23 establish on a class-wide basis that the alleged failure to timely pay all final wages

24 was willful and that wage statement irregularities were knowing and intentional

25 and resulted in actual injury.  For these reasons, Defendants claimed that they did

26 not engage in any unfair business practices and denied liability under PAGA.

27 ///

28 ///

3

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

**B.     This Litigation's Procedural History.**

Plaintiffs filed their complaint on April 2, 2013 in the United States District Court for the Central District of California. *See* DE No. 1.  On April 18, 2013 Plaintiffs filed a First Amended Complaint adding previously un-pled claims for meal period violations and failure to reimburse employees for necessary expenditures.  *See* DE No. 4.  Defendants filed an Answer to the First Amended Complaint on August 23, 2013.  *See* DE No. 7.  Shortly thereafter, counsel for the parties met and conferred regarding the bases of the claims and defenses and began discussing the possibility of private mediation.  *See* Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), ¶ 10.  The parties reached an agreement to attend private mediation with Mark Rudy, an experienced and respected wage and hour class action mediator in California, and for the purposes of mediation, Defendants produced a sampling of payroll and timekeeping data for approximately 10% of the putative class, covering approximately 40% of the putative class period.  *Id.*

After extensively reviewing the data produced by Defendants and retaining a statistical economist to analyze the electronic payroll and timekeeping data (*See* Section II(C), *infra*), the parties parties attended mediation with Mark Rudy in Los Angeles on April 15, 2014.  Baltodano Decl., ¶ 13.  The mediation ultimately resulted in a class-wide resolution of all claims.  *Id.*  On April 21, 2014, the parties advised the Court that they had reached a resolution, and on July 8, 2014, this Court granted preliminary approval.  *See* DE Nos. 16 & 20.  Plaintiffs now move this Court for final approval.

**C.     The Parties' Discovery and Analysis.**

Prior to mediation, the parties engaged in a significant amount of informal discovery and analysis.  Although the parties agreed to stay formal discovery pending mediation, Defendants produced 5,411 pages of policies, work schedules, and payroll and timecard records spanning 4,718 shifts worked by 43 members of the Settlement Class.  Baltodano Decl., ¶ 11.  Plaintiffs retained a statistical

4

1   economist to analyse all of the payroll and timecard data produced by Defendants.

2   *Id.* Plaintiffs conducted a comprehensive analysis of the data, and determined the

3   average rate of pay, average number of regular-time and overtime hours worked,

4   the number of shifts giving rise to meal and rest period violations, and the

5   frequency and value of free or discounted meals provided to non-exempt

6   employees. *Id.* Using this data, Plaintiffs were able to estimate the total amount of

7   alleged unpaid wages by extrapolating their findings to the entire Settlement Class.

8   *Id.*

9           In summary, the parties entered mediation and ultimately resolved this case

10  only after exchanging their divergent views and analyses of the claims and

11  defenses thereto, and a substantial amount of informal information and data over

12  the course of several months.  This extensive exchange allowed the parties to

13  appreciate the uncertainty, expense, and risk involved in this litigation.

14  **III.    THIS SETTLEMENT WARRANTS FINAL APPROVAL.**

15          A proposed class action settlement can be "settled, voluntarily dismissed, or

16  compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e).  Thus,

17  in order to approve this proposed class action settlement, this Court must conclude

18  that the proposed settlement is "fair, adequate and reasonable," and is the product

19  of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546

20  F.3d 667, 674 (9th Cir. 2008).   According to the Ninth Circuit, "there is a strong

21  judicial policy that favors settlement, particularly where complex class action

22  litigation is concerned." *See In re Syncor ERISA litigation*, 516 F.3d 1095, 1101

23  (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

24  Cir. 1992)).

25          Judicial approval of an FLSA settlement is also necessary to effectuate a

26  valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v.*

27  *United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  In this regard, pursuant to a

28  private enforcement action under Section 16(b) of the FLSA, such as this one, a

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1   district court may approve a settlement reached as a result of contested litigation to

2   resolve a *bona fide* dispute between the parties. *Id.* at 1355.   Thus, the Court should

3   approve the proposed FLSA settlement if it is satisfied that the settlement is the

4   product of contested litigation and determines that the settlement involves a fair

5   and reasonable resolution of a *bona fide* dispute between the parties over FLSA

6   coverage. *Id.*  Here, the only FLSA claims asserted on behalf of the Settlement

7   Class are co-extensive with the state law claims for unpaid wages, so each

8   Settlement Class member who did not exclude himself or herself shall receive

9   consideration in exchange for their releases of the FLSA claim.   Because the

10  factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23

11  assess the same factors, Plaintiffs' analysis of the Rule 23 factors is equally

12  applicable to the settlement of the FLSA claim and Plaintiffs will not repeat them

13  here. *Compare Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478

14  (E.D. Cal. 2010) with *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir.

15  2009).

16          **A.     The Settlement Is Fair, Adequate, and Reasonable.**

17          In determining whether a proposed class action settlement is "fair,

18  reasonable, and adequate," as required by Rule 23(e)(2) of the Federal Rules of

19  Civil Procedure, this Court may consider some or all of the following factors: (1)

20  the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely

21  duration of further litigation; (3) the risk of maintaining class action status

22  throughout trial; (4) the amount offered in settlement; (5) the extent of discovery

23  completed and the stage of the proceedings; (6) the experience and views of

24  counsel; (7) the presence of a governmental participant; [1] and (8) the reaction of

---

26  [1] This factor is not addressed because there is no governmental participant. *See, e.g., Wren v.*

27  *RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826 at *10 (N.D. Cal.
    April 1, 2011) ("Because there is no governmental entity involved in this litigation, the seventh

28  factor is inapplicable").  However, because Plaintiffs pled a claim under PAGA, the California
    Labor and Workforce Development Agency will receive a payment of $1,875 should the Court

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

the class members to the proposed settlement. *See Rodriguez, supra,* 563 F.3d at 963. Plaintiffs address each of these factors below.

### 1.   The Strength of Plaintiffs' Case.

Although they maintain that their claims are meritorious, Plaintiffs recognize that Defendants possessed legitimate defenses to prevailing on liability and certification. For example, regarding the meal period claim, Defendants argued that the vast majority of work shifts were less than six hours in length, such that meal periods were voluntarily waived. Baltodano Decl., ¶ 12. Regarding the rest period claim, Defendants produced a facially compliant rest period policy which they claimed was put into effect during the class period at their four restaurants. *Id.* In the absence of an unlawful rest period policy, Defendants asserted, certification was unlikely. *Id.* With respect to Plaintiffs' employee reimbursement claim, Defendants adamantly maintained that they had no obligation to reimburse non-exempt employees for the cost of slip resistant shoes because generic, ordinary footwear is not considered a "uniform" necessitating reimbursement. *Id.* Finally, as noted above, Defendants claimed that they complied with their overtime obligations. *Id.*

Consequently, Defendants asserted that they possessed a strong defense to the derivative waiting time penalties because there existed a "good-faith" dispute that any wages were due, thereby precluding the imposition of waiting time penalties. *See* 8 Cal. Code of Regulations § 13520 (a "good-faith" dispute exists to waiting time penalties "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee.

---

grant final approval. This payment comports with PAGA payments in other class action settlements. *See, e.g., Chu v. Wells Fargo Investments, LLC,* Case No. C 05-4526 MHP, C 05-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. February 16, 2011) (approving PAGA payment of $7,500 to the CLWDA out of $6.9 million common-fund settlement); *Lazarin v. Pro Unlimited, Inc.,* Case No. C11-03609 HRL, 2013 WL 3541217 at *2 (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to the CLWDA out of $1.25 million common-fund settlement).

7

1   The fact that a defense is ultimately unsuccessful will not preclude a finding that a

2   good faith dispute did exist."); Baltodano Decl., ¶ 12.  Defendants also maintained

3   that Plaintiffs would not be able to recover wage statement penalties because

4   Plaintiffs could not prove that all putative class members experienced "injury"

5   under Labor Code § 226.  *See, e.g., Villacres v. ABM Industries, Inc.*, 384

6   Fed.Appx. 626 (9th Cir. 2010) (granting summary judgment for employer on

7   Labor Code § 226 claim based on lack of injury); Baltodano Decl., ¶ 12.

8        Moreover, because Plaintiffs' claims for civil penalties under PAGA were

9   wholly derivative of the underlying overtime, meal and rest period claims,

10  Defendants asserted that the PAGA claims would rise or fall with such claims.  *See,*

11  *e.g., Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D.

12  Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly

13  dependent upon her other claims.  Because all of Plaintiff's other claims fail as a

14  matter of law, so does her PAGA claim."); Baltodano Decl., ¶ 12.  Defendants also

15  asserted that any civil penalties were unconstitutional because they were

16  confiscatory since the penalties sought were grossly disproportionate to the actual

17  amount of alleged overtime wages owed.  *See, e.g., Willner v. Manpower Inc.*,

18  Case No. C 11-02846 JSW, 2012 WL 1570789 at *7 (N.D. Cal. May 3, 2012)

19  ("The Court retains discretion over awards under a PAGA claim and may 'award a

20  lesser amount than the maximum civil penalty amount specified [under PAGA] if,

21  based on the facts and circumstances of the particular case, to do otherwise would

22  result in an award that is unjust, arbitrary and oppressive, or confiscatory.'") (citing

23  Cal. Labor Code § 2699(e)(2));  Baltodano Decl., ¶ 12.

24       Despite Defendants' defenses, however, Plaintiffs secured a substantial

25  recovery for the class.  This factor therefore supports final approval.  Indeed, "[i]n

26  most situations, unless the settlement is clearly inadequate, its acceptance and

27  approval are preferable to lengthy and expensive litigation with uncertain results."

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)(internal quotations omitted).

### 2.   Risk, Expense, Complexity, and Duration of Further Litigation.

This factor, too, supports final approval because although the parties engaged in a significant amount of investigation, informal discovery, and class-wide data analysis, the parties stood to incur significant additional expense if this case had not been resolved. Baltodano Decl., ¶ 14.  Plaintiffs had prepared to depose Defendants' FRCP 30(b)(6) witnesses and restaurant managers on all topics related to Defendants' policies for provision of free and reduced-price meals to non-exempt employees, calculation of the regular rate of pay, and meal and rest period policies and practices. *Id.*  Defendants planned to depose Plaintiffs if mediation was unsuccessful, and move for summary adjudication on all or some of the claims. *Id.*  Moreover, preparation for class certification and a trial remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiffs and/or adverse summary judgment ruling. *Id.*  As a result, the parties stood to incur considerable additional attorneys' fees and costs through trial. *Id.*  Therefore, this settlement avoids the risk of non-recovery and the additional, accompanying expense associated with wage and hour class action litigation. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. November 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").  Therefore, this factor supports final approval.

### 3.   Risk of Maintaining Class Action Status.

Plaintiffs had not yet filed their motion for class certification.  However, had Plaintiffs succeeded in certifying any claims, Defendants intended to decertify the claims.  Thus, absent settlement, there was a risk that there would not be a certified class at the time of trial.  This factor also supports final approval.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

4.   **Amount Offered in Settlement Is Reasonable Given the Realistic Value of the Claims In Light of the Litigation Risks.**

Plaintiffs predicted that their realistic total recovery for the Class would be approximately $772,384 after discounting the claims for non-certification and/or outright dismissal. *See* DE No. 18.  The proposed settlement of $375,000 therefore represents approximately 48% of Plaintiffs' reasonably forecasted recovery. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations omitted).  As this Court concluded in its preliminary approval order, the settlement agreement's terms fall within the range of reasonableness. *See* DE No. 20 at 2:9-12.  Thus, final approval is warranted.

On a more granular level, the Settlement Class members who filed claim forms will receive an average settlement payment of approximately $1,031.25, with the highest payment being $2,787.35.  *See* Declaration of Ani Shirinian ("Shirinian Decl."), ¶ 24.  In light of Defendants' defenses to liability and certification, this average payment amount is an excellent result for the Settlement Class, particularly when compared to similar wage and hour class action settlements involving similar-wage workers. *See, e.g., Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final approval of proposed class action settlement where average recovery to Settlement Class members was estimated at $345); *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (granting final approval of class action settlement based on average settlement class member recovery of $462.22); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx) (C.D. Cal. April 16, 2012) (granting final approval of settlement where average Settlement Class member recovery was

10

$561.58); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement approved where average class member recovery was approximately $60)*; Barbosa v. Cargill Meat Solutions Corp.*, Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13 (E.D. Cal. July 2, 2013) (wage and hour class action settlement of $1,290,000 for 1,837 hourly employees yielded maximum settlement payment of $922.29 and average settlement payment of $601.91); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78.  Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of class action settlement where average recovery for each class member was approximately $108).  Thus, this factor weighs in favor of final approval.

## 5.    **Discovery Completed and the Status of Proceedings.**

As detailed above in Section II, *supra*, and in Plaintiffs' Motion for Preliminary Approval, the parties engaged in a significant amount of informal class-wide discovery and analysis, including reviewing and analysing more than 5,400 pages of policies regarding employee hours, work schedules, overtime practices, and meal and rest period practices, and timekeeping and payroll information for 43 putative class members, covering approximately 40% of the putative class period as of the date of mediation.   Plaintiffs had the payroll and timekeeping data statistically analyzed by a third-party expert consultant, and it was only after this exchange that the parties participated in a full-day mediation

11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    session and ultimately reached this proposed settlement.  Thus, this factor also

2    supports final approval.

3        **6.    The Experience and Views of Counsel.**

4        "Parties represented by competent counsel are better positioned than courts

5    to produce a settlement that fairly reflects each party's expected outcome in

6    litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th

7    Cir. 1995).  Here, Plaintiffs are represented by experienced wage and hour class

8    action counsel who collaborated to press Plaintiffs' claims forward against Gordon

9    & Rees LLP, a large, national law firm with expertise in employer-side class action

10   wage and hour litigation. *See* Baltodano Decl., ¶¶ 2-9; Declaration of Paul K.

11   Haines ("Haines Decl."), ¶¶ 2-7.  This factor therefore strongly supports final

12   approval. *See, e.g., Gribble v. Cool Transports Inc.*, Case No. CV 06-04863 GAF

13   SHX, 2008 WL 5281665 at *9 (C.D. Cal. December 15, 2008) ("Great weight is

14   accorded to the recommendation of counsel, who are most likely acquainted with

15   the facts of the underlying litigation.").

16       **7.    The Reaction of the Class Members to the Proposed Settlement.**

17       A court may infer that a class action settlement is fair, adequate, and

18   reasonable when few class members object. *See Marshall v. Holiday Magic, Inc.*,

19   550 F.2d 1173, 1178 (9th Cir. 1977).  "[T]he absence of a large number of

20   objections to a proposed class action settlement raises a strong presumption that

21   the terms of a proposed class action settlement are favorable to the class

22   members." *See National Rural Tele. Coop., supra,* 221 F.R.D. at 529.  Here, not a

23   single class member filed an objection to the proposed settlement after notice was

24   provided to the 362 Settlement Class members informing them about the terms of

25   the proposed settlement, their estimated individual settlement payout and rights

26   under the settlement, the amounts sought by Class Counsel in attorneys' fees and

27   costs, and the amount sought by the Class Representatives as enhancement

28   awards. Shirinian Decl., ¶¶ 5-8 & 19.  Moreover, nearly 30% of the members of

12

1  the Settlement Class have submitted valid claim forms, a claim rate which is on

2  par with and exceeds those typically found in wage and hour class action

3  settlements. *See, e.g., Barcia v. Contain-A-Way, Inc.*, Case No. 07cv938-IEG-

4  JMA, 2009 WL 587844 at *5 (S.D. Cal. Mar. 6, 2009) (granting final approval of

5  California class with 20% claims rate); *Rodriguez v. D.M. Camp & Sons*, Case

6  No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927 at *4 (E.D. Cal. May 15, 2013)

7  (granting final approval of California class with 15% claims rate); Shirinian Decl.,

8  ¶¶ 20 & 21.  Moreover, only 3 of the 362 members of the Settlement Class elected

9  to opt-out of this settlement (approximately 0.8%).  Shirinian Decl., ¶ 14.  Thus,

10 this factor supports final settlement approval.

11 **IV.   THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS**

12 **PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED.**

13       In its July 8, 2014 order granting preliminary approval, this Court certified

14 the settlement class, as defined in Section I, *supra*, for settlement purposes only.

15 *See* DE No. 20 at 2:13-17.  The Court found that the Settlement Class met the

16 requirements of Rule 23(a) and Rule 23(b)(3).  *Id.* at 2:19-22.  Because

17 circumstances have not changed, and for the reasons set forth in their motion for

18 preliminary approval (*See* DE No. 18), Plaintiffs request that the Court finally

19 certify the Settlement Class for settlement purposes under Rule 23(e).  *See Schiller,*

20 *supra*, 2012 WL 2117001 at *8 ("As initially determined in the Court's

21 preliminary approval order and as set forth above, the Rule 23(a) requirements for

22 class certification have been satisfied.")

23 **V.   THE COURT-ORDERED NOTICE COMPORTS WITH DUE**

24 **PROCESS.**

25       Due process requires that notice be provided to class members by the best

26 reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156,

27 173 (1974).  Notice is satisfactory if it "generally describes the terms of the

28 settlement in sufficient detail to alert those with adverse viewpoints to investigate

13

1  and to come forward and be heard." *See Churchhill Village, L.L.C. v. General*
2  *Electric*, 361 F.3d 566, 575 (9th Cir. 2004).   Here, the parties engaged CPT
3  Group, Inc. ("CPT"), an experienced third-party settlement administrator, to mail
4  the Class Notice and related forms to settlement class members. *See* Shirinian
5  Decl., ¶ 2.

6        The concurrently-filed declaration of Ani Shirinian details the settlement
7  administration efforts of CPT.  For example, on August 18, 2014, and via First
8  Class mail, CPT mailed notice packets to 362 Settlement Class members. *See*
9  Shirinian Decl., ¶¶ 5 & 7.  The mailing addresses contained in the Class List were
10  processed and updated using the National Change of Address Database ("NCOA")
11  maintained by the U.S. Postal Service. *See id. at* ¶ 6.  The NCOA contains
12  requested changes of address filed with the U.S. Postal Service. *Id.*  In the event
13  that any individual had filed a U.S. Postal Service change of address request, the
14  address listed with the NCOA was utilized in connection with the mailing of the
15  Notice Packet. *Id.*

16        The notice contained information about the claims in the litigation and the
17  terms of the settlement, explained the rights and release of claims under the
18  settlement, the right to submit a claim, opt-out, or object to the settlement,
19  explained the calculation of settlement shares, included estimated individual
20  settlement payment amounts, informed the Settlement Class of the October 17,
21  2014, deadline for objecting to the settlement or opting out, and informed them of
22  the date, time, and location of the November 10, 2014, final approval hearing. *See*
23  Shirinian Decl., ¶ 7, Ex. A.  On September 17, 2014, CPT mailed a reminder
24  postcard to 290 Class Members who had not yet submitted a response, reminding
25  them of the October 17, 2014 deadline to submit claims, opt-out or object. *See id.*
26  at ¶ 8, Ex. B.

27        As of October 6, 2014, three notice packets had been returned by the post
28  office. Shirinian Decl., ¶ 10.  Two notice packets were re-mailed to an updated

14

---

address as a result of locating an updated address via Skip Trace. *Id.* Ultimately, only one notice packet was deemed undeliverable as no better address could be located. *Id.* One-hundred and six members of the Settlement Class have submitted valid claims as of the date of this filing. *Id.* at ¶ 20. Not a single Settlement Class member objected to the settlement, and only 3 Settlement Class members opted out of the settlement (approximately 0.8%). *See* Shirinian Decl., ¶ 14 & 19. For these reasons, Plaintiffs submit that the notice procedure implemented for this settlement meets the requirements of Due Process, and requests that the Court approve the payment of $17,000 to CPT for administering the settlement. *See id.* at ¶ 26.

## VI.    **CONCLUSION.**

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this motion and enter the order granting final approval.

Dated:  October 9, 2014
Respectfully submitted,
BALTODANO & BALTODANO LLP

By:    _/s/Hernaldo J. Baltodano_____
Hernaldo J. Baltodano, Esq.
Attorneys for Plaintiffs, the Class and
Aggrieved Employees

15