**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Tel: (805) 322-3412
Fax: (805) 322-3413

**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
222 North Sepulveda Blvd., Suite 2222
El Segundo, California 90245
Tel: (310) 322-2220
Fax:(310) 322-2228

Attorneys for Plaintiff, the Class
And Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA ANN MORAWSKI and JOSE L. CORTEZ as individuals and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>A.J. SPURS RESTAURANT – SANTA MARIA, INC., a California Corporation; A.J. SPURS – BUELLTON, INC., a California Corporation; A.J. SPURS – TEMPLETON, INC., a California Corporation; MILT GUGGIA ENTERPRISES, INC., dba A.J. SPURS SALOON & DINING HALL, a California Corporation; and DOES 1 through 10,<br><br>          Defendants. | CASE No. CV13-2349 AB (RZx)<br><br>**DECLARATION OF HERNALDO J. BALTODANO IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS**<br><br>Judge: Hon. André Birotte Jr.<br>Date:  November 10, 2014<br>Time:  10:00 a.m.<br>Dept.:  790 |

1

1   I, HERNALDO J. BALTODANO, declare as follows:

2       1.      I am a partner at the law firm of Baltodano & Baltodano LLP, and co-

3   counsel for the named Plaintiffs Barbara Ann Morawski and Jose L. Cortez

4   ("Plaintiff"), and the proposed Settlement Class in the above-captioned matter.  I

5   am a member in good standing of the bar of the State of California and am

6   admitted to practice in this Court.  I have personal knowledge of the facts stated in

7   this declaration and could testify competently to them if called upon to do so.

8       2.      I am a 2002 graduate of the University of California at Berkeley's

9   Boalt Hall School of Law and have devoted my entire legal career to the practice

10  of employment law including, but not limited to, single and multi-plaintiff wage

11  and hour litigation, and wage and hour class action litigation.  During my career, I

12  have represented both plaintiffs and defendants in wage and hour class action

13  litigation, published articles regarding employment law in the *Los Angeles Daily*

14  *Journal* and *Los Angeles Lawyer Magazine*, and spoken about civil litigation

15  practices and employment law topics to other legal professionals, legal staff,

16  business owners and stake-holders as a panelist, guest speaker, and continuing

17  education lecturer.  My law firm is exclusively devoted to the practice of

18  employment law.

19      3.      For nine years, Thomson Reuters and Los Angeles Magazine

20  recognized me as a Top Young Attorney in Southern California in the annual

21  Rising Star Edition of Super Lawyer.  This is an honor awarded to no more than

22  two and a half percent of attorneys under the age of forty in Southern California

23  each year.  In January 2014, Thomson Reuters and Los Angeles Magazine

24  recognized me as a Southern California Super Lawyer in the practice area of

25  employment litigation.  This is an honor awarded to no more than five percent of

26  all attorneys in Southern California.

27      4.      I began my legal career as an associate at the law firm of Hadsell &

28  Stormer, Inc., a well-known and highly respected plaintiff's employment and civil

2

rights firm in Pasadena, California.  I spent approximately eighteen months at Hadsell & Stormer, Inc., working on a hybrid Rule 23 wage and hour class action and FLSA opt-in collective action involving approximately 2,000 janitors who were allegedly co-employed by several supermarket chains, including Albertson's, Inc., and the Vons Companies. *See Flores v. Albertson's, Inc.*, 2003 WL 24216269 (C.D. Cal. 2003).  This case involved claims for unpaid minimum and overtime wages and related Labor Code violations.  As a first and second year associate and the only native Spanish-speaking plaintiff's attorney, I was charged with organizing as many absent class members as possible throughout Southern California and Puebla, Mexico to respond to a court-ordered questionnaire.  I also personally defended approximately sixty depositions of absent class members throughout Southern California and Puebla, Mexico.  Because of my efforts, several hundred absent class members responded to the court-ordered questionnaire.  I was also charged with reviewing tens of thousands of documents and assisting with preparing Plaintiffs' oppositions to the defendants' various motions for summary adjudication based on the defense that they did not jointly employ Plaintiffs or members of the class.  My work on this case, as well as the work of the entire Plaintiffs' team, was featured in the 2010 documentary film *Battle of the Invisibles*.  Because of my efforts, I received a certificate of recognition from the City of Los Angeles.

5.     After working on *Flores v. Albertson's*, I spent approximately two and one-half years litigating single and multi-plaintiff wage and hour cases and employment cases under the Fair Employment and Housing Act ("FEHA").  During this period time, I represented plaintiffs, most of whom were low-wage, monolingual Spanish-speaking individuals, and labor organizations in employment litigation.  At one point, I was chiefly responsible for litigating approximately 80 single and multi-plaintiff wage and hour matters.  As the lead attorney, I was responsible for the day-to-day management of these cases, including intake,

BALTODANO DECLARATION ISO MOTION FOR FINAL SETTLEMENT APPROVAL, CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS

1   conducting pre-litigation investigation, informal discovery and investigation, legal
2   research and analysis, handling the vast majority of written and deposition
3   discovery, handling all client communications as the only Spanish-speaking
4   attorney, corresponding with opposing counsel, creating damage exposure models
5   for settlement purposes, law and motion practice, including the drafting of briefs
6   and court appearances, pre-trial preparation and briefing, and attending mediations
7   and settlement conferences.  The bulk of the claims I litigated involved claims of
8   unpaid minimum and overtime wages due to miscalculation of the regular rate of
9   pay and "off-the-clock" work, misclassification, meal and rest period violations,
10   wage statement violations, final payment wage violations, and unpaid vacation pay
11   claims.
12         6.      Because of personal and financial reasons, I transitioned to
13   employment litigation defense and advice and counsel work in 2006.  I joined the
14   national law firm of Robins Kaplan Miller & Ciresi LLP ("RKMC"), located in
15   Los Angeles, California, where I continued to practice employment law until
16   December 2009 as a senior associate.  My practice at RKMC consisted of
17   defending publicly-traded companies in employment and wage and hour class
18   action litigation in state and federal courts.  In addition to defending employers in
19   FEHA litigation, I was involved in defending approximately ten class actions, the
20   majority being wage and hour class actions.  These wage and hour cases I worked
21   on are *Napier v. Healthcare Services Group, Inc.* (Los Angeles County Superior
22   Court; Case No. BC 403626; overtime, meal and rest period, and related Labor
23   Code claims stemming from alleged misclassification), *Lohn v. Healthcare*
24   *Services Group, Inc.* (Los Angeles County Superior Court; Case No. BC 391133;
25   paycheck, overtime, meal and rest period, and related Labor Code claims
26   stemming from alleged misclassification), *Roberts v. Best Buy Co., Inc.* (Contra
27   Costa County Superior Court; Case No. C02-01642; overtime, meal and rest
28   period, and related Labor Code claims stemming from alleged misclassification),

4

1  *Diaz v. Best Buy Stores, L.P.* (Alameda County Superior Court; Case No. RG06-
2  264187; paycheck violations and PAGA claims), *Kurihara v. Best Buy Co., Inc.*,
3  2007 WL 2501698 (N.D. Cal. 2007) (meal period violations and "off the clock"
4  allegations), *LaGuardia v. Best Buy Co., Inc.* (C.D. Cal., Case No. CV 07-02791 R
5  (Ex); claims for unpaid vacation and overtime wages, meal period violations, and
6  related Labor Code violations); *Tse v. Best Buy Co., Inc.* (Los Angeles County
7  Superior Court; Case No. BC 392717; claims for unpaid overtime and related
8  penalty claims); and *Mardock v. Great Clips, Inc.* (Sacramento County Superior
9  Court; Case No. 34-2008-00013454-CU-OE-GDS; meal and rest period claims and
10  related Labor Code claims).

11        7.       After leaving RKMC in January 2010, I continued practicing
12  employment law in Los Angeles, before relocating to San Luis Obispo, California
13  in January 2011.  During that time, I defended two other wage and hour class
14  action lawsuits, *Sagaz v. North Island Financial Credit Union* (San Diego County
15  Superior Court, Case No. Case No. 37-2009-00099913-CU-OE-CTL; unpaid
16  overtime claims, meal period claims, and related Labor Code claims), and
17  *Wesselhoft v. Precision Dynamic Corporation* (Los Angeles County Superior
18  Court; Case No. BC 420108; unpaid vacation and overtime claims, meal and rest
19  period claims, and related Labor Code claims).  My work on these cases also
20  involved claim analysis and evaluation, assessing potential damage exposure based
21  on the plaintiffs' claims, conferring with opposing counsel, working with an expert
22  consultant to assess the merits and certification opposition of plaintiffs' claims,
23  preparing mediation briefing, attending mediation, settlement negotiations, and
24  taking the lead in facilitating preliminary settlement approval.

25        8.       Since relocating to San Luis Obispo and forming my own law firm, I
26  have been appointed as Class Counsel in *Mejia v. Alliance Residential LLC* (C.D.
27  Cal., Case No. 2:11-CV11-08879-DDP-JCGx; unpaid overtime wages and related
28  penalty claims); *Cruz v. Bimbo Bakeries USA, Inc.* (C.D. Cal., Case No. 2:11-cv-

BALTODANO DECLARATION ISO MOTION FOR FINAL SETTLEMENT APPROVAL, CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS

07589-GHK –AJWx; unpaid overtime wages, meal and rest period violations, and related penalty claims); *Lopez v. Cornucopia Tools and Plastics, Inc.* (San Luis Obispo County Superior Court, Case No. CV138049; unpaid minimum and overtime wages, meal and rest period violations, and related penalty claims); *Willmore v. Fairway, Inc.* (San Luis Obispo County Superior Court, Case No. CV110480; unpaid minimum and overtime wages, meal and rest period violations, and related penalty claims); *Tacker v. Compass Health, Inc.*, (C.D. Cal., Case No. 2:13-cv-02261-BRO-JCGx; unpaid overtime wages, meal and rest period violations, and related penalty claims) (in which I was approved for a billable rate of $600 per hour for work performed in 2013 and 2014); *Noell v. American Professional Ambulance Corporation, Inc.*, (Los Angeles County Superior Court, Case No. BC499345; unpaid overtime and minimum wages, meal and rest period violations, and related penalty claims) (in which I was approved for a billable rate of $550 per hour for work performed in 2013 and 2014); *Bautista v. Harvest Management Sub LLC* (C.D. Cal., Case No. CV12-10004 FMO (CWx); unpaid overtime wages, rest period violations, and related penalty claims) (in which I was approved for a billable rate of $600 per hour for work performed in 2013 and 2014); *Davila v. OCB Restaurant Co.* (C.D. Cal., Case No. 2:13-cv-5403-PA-JCGx; unpaid overtime wages, meal and rest period violations, and related penalty claims); *Abad v. Waste Connections, Inc.*, (C.D. Cal., Case No. CV12-06708 DDP (PJWx); unpaid minimum and overtime wages, meal period violations, and related penalty claims); *Morales v. Sunset Tower Hotel LLC* (Los Angeles County Superior Court, Case No. BC511924; unpaid minimum and overtime wage, meal and rest period violations, and related penalty claims); and *Plantillas v. Snap-On Incorporated* (C.D. Cal., Case No. CV13-05153 DDP (VBKx); unpaid minimum and overtime wages and related penalty claims).   I have also been preliminarily certified as Class Counsel in *Gonzalez v. Universal Alloy Corp.*, (C.D. Cal., Case No SACV 13-00807 JVS (MRWx); unpaid minimum and overtime wage, meal

1  and rest period violations, and related penalty claims); and *Morawski v. AJ Spurs*

2  *Restaurant*, (C.D. Cal., Case No. CV13-2349 ABC (RZx); unpaid overtime wages,

3  meal and rest period violations, and related penalty claims).

4       9.     Having prosecuted and defended many wage and hour cases, I have

5  the experience to soberly assess and evaluate the risks related to proving liability

6  and certifying a class – not only from a legal, but practical perspective as well (i.e.,

7  current employees afraid of speaking up for fear of retaliation).  Not only have I

8  litigated over one-hundred and twenty-five wage and hour cases throughout my

9  career involving similar claims, including the wage and hour class actions

10  identified above, I have litigated similar claims from both plaintiff and defense

11  perspectives.  As a result, I am able to realistically assess and evaluate the facts and

12  legal arguments that can be made in pursuit and defense of similar wage and hour

13  claims, as well as those facts and arguments in support and in opposition to class

14  certification.  Consequently, I am able to appreciate the significant risks,

15  uncertainties, and delay involved in wage and hour class action litigation.

16       10.    Plaintiffs filed their complaint on April 2, 2013 in the United States

17  District Court for the Central District of California.  On April 18, 2013 Plaintiffs

18  filed a First Amended Complaint adding previously un-pled claims for meal period

19  violations and failure to reimburse employees for necessary expenditures.

20  Defendants filed an Answer to the First Amended Complaint on August 23, 2013.

21  Shortly thereafter, counsel for the parties met and conferred regarding the bases of

22  the claims and defenses and began discussing the possibility of private mediation.

23  The parties reached an agreement to attend private mediation with Mark Rudy, an

24  experienced and respected wage and hour class action mediator in California, and

25  Defendants agreed to produce a representative sampling of payroll and

26  timekeeping data in advance of mediation.   Although mediation was originally

27  scheduled for January 28, 2014, due to difficulties in collecting some of the

28  timekeeping and payroll data, the parties agreed to continue the mediation date to

BALTODANO DECLARATION ISO MOTION FOR FINAL SETTLEMENT APPROVAL, CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS

April 15, 2014, and Defendants ultimately produced a sampling of payroll and timekeeping data for approximately 10% of the putative class, covering approximately 40% of the putative class period.

11.     In preparation for mediation, Plaintiffs retained a data analysis professional to analyse all of the payroll and timecard data produced by Defendants.  Plaintiffs conducted a comprehensive analysis of the data, which included 4,718 shifts worked by 43 members of the Settlement Class. Consequently, Plaintiffs were able to determine the average rate of pay, average number of regular-time and overtime hours worked, the number of shifts giving rise to meal and rest period violations, and the frequency and value of free or discounted meals provided to non-exempt employees.   Using this data, Plaintiffs were able to estimate the total amount of alleged unpaid wages by extrapolating their findings to the entire Settlement Class.  During this time, Plaintiffs also analysed 5,411 pages of policies, work schedules, and payroll records produced by Defendants, and interviewed several putative class members to gauge the breadth of meal and rest period violations at Defendants' four restaurant locations.

12.     In their defense, Defendants argued that the vast majority of work shifts were less than six hours in length, such that meal periods were voluntarily waived.  Regarding the rest period claim, Defendants produced a facially compliant rest period policy which they claimed was put into effect during the class period at their four restaurants.  In the absence of an unlawful rest period policy, Defendants asserted, certification was unlikely.  With respect to Plaintiffs' employee reimbursement claim, Defendants adamantly maintained that they had no obligation to reimburse non-exempt employees for the cost of slip resistant shoes because generic, ordinary footwear is not considered a "uniform" necessitating reimbursement.  Finally, as noted above, Defendants claimed that they complied with their overtime obligations.   Consequently, Defendants asserted that they possessed a strong defense to the derivative waiting time penalties

1    because there existed a "good-faith" dispute that any wages were due, thereby

2    precluding the imposition of waiting time penalties.  Defendants also maintained

3    that Plaintiffs would not be able to recover wage statement penalties because

4    Plaintiffs could not prove that all putative class members experienced "injury"

5    under Labor Code § 226.  Moreover, because Plaintiffs' claims for civil penalties

6    under PAGA were wholly derivative of the underlying overtime, meal and rest

7    period claims, Defendants asserted that the PAGA claims would rise or fall with

8    such claims.  Defendants also asserted that any civil penalties were

9    unconstitutional because they were confiscatory since the penalties sought were

10   grossly disproportionate to the actual amount of alleged overtime wages owed.

11        13.    The parties attended mediation with Mark Rudy in Los Angeles on

12   April 15, 2014.  After a full day of negotiations, Mr. Rudy made a mediator's

13   proposal for a class-wide resolution of all claims, which both parties accepted.

14   The parties subsequently executed a Memorandum of Understanding outlining the

15   essential terms of the proposed settlement.  On April 21, 2014, the parties advised

16   the Court that they had reached a resolution and subsequently continued

17   negotiating and drafting the long-form Settlement Agreement which was executed

18   on June 10, 2014.

19        14.    Although the parties engaged in a significant amount of investigation,

20   informal discovery, and class-wide data analysis, the parties stood to incur

21   significant additional expense if this case had not been resolved.  Plaintiffs had

22   prepared to depose Defendants' FRCP 30(b)(6) witnesses and restaurant managers

23   on all topics related to Defendants' policies for provision of free and reduced-price

24   meals to non-exempt employees, calculation of the regular rate of pay, and meal

25   and rest period policies and practices.  Defendants planned to depose Plaintiffs if

26   mediation was unsuccessful, and move for summary adjudication on all or some of

27   the claims.  Moreover, preparation for class certification and a trial remained for

28   the parties as well as the prospect of appeals in the wake of a disputed class

1   certification ruling for Plaintiffs and/or adverse summary judgment ruling.  As a

2   result, the parties stood to incur considerable additional attorneys' fees and costs

3   through trial.

4        15.    Defendants have agreed to pay a MSA of $375,000 to the settlement

5   class.  After deducting amounts for court-approved Plaintiff's incentive payments,

6   costs of settlement administration, attorneys' fees and costs, and the PAGA

7   payment to the CLWDA, the settlement requires Defendants to pay a Net

8   Settlement Amount ("NSA") of up to $218,625 to all members of the Settlement

9   Class who filed claims.

10       16.    Each settlement class member's projected recovery is based on the

11  number of her/his workweeks worked during the putative class period. Baltodano

12  As of this date, the average settlement payment per valid claimant is approximately

13  $1,031.25 and the highest estimated settlement payment is approximately

14  $2,787.35, which is substantial given the litigation risks involved.

15       17.    Pursuant to the proposed class action settlement, Defendants have

16  agreed not to oppose Class Counsel's application for reasonable attorneys' fees and

17  costs incurred in litigating this action in amounts not to exceed 30% of the

18  Maximum Settlement Amount or $112,500 in reasonable attorneys' fees and

19  $20,000, in costs, respectively.  As of this date, I have spent approximately 107.9

20  hours on this case at a billable rate of $600 per hour, including hours incurred in

21  preparing for and in anticipation of attending the final fairness hearing on

22  November 10, 2014 in Los Angeles, California.  Moreover, Alice W. Mitchell, a

23  paralegal at my law firm, has spent 1.6 hours on this case.  Ms. Mitchell is a

24  certificated paralegal; she received her undergraduate degree from Portland State

25  University and received her Associate in Arts Paralegal degree from Cuesta

26  Community College in San Luis Obispo, California.

27       18.    The total amount of attorney and paralegal time for my law firm is

28  estimated at 107.9 and 1.6 hours, respectively, reflecting a lodestar of $65,020

(107.9 hours worked multiplied by $600, plus 1.6 hours multiplied by $175).  Filed concurrently herewith is a declaration from my co-counsel, Paul K. Haines, attesting to the hours that his law firm has spent on this case.  Collectively, our law firms have spent approximately 233 hours on this case, reflecting a collective lodestar of $109,531.50 as follows:

| Timekeeper | Hourly Rate | Hours | Fees |
|---|---|---|---|
| Hernaldo J. Baltodano<br>Class of 2002 | $600 | 107.9 | $64,740 |
| Paul K. Haines<br>Class of 2006 | $500 | 34.9 | $17,450 |
| Fletcher S. Schmidt<br>Class of 2012 | $320 | 79.7 | $25,504 |
| Alice W. Mitchell<br>Paralegal | $175 | 1.6 | $280 |
| Aaron Clark<br>Paralegal | $175 | 8.9 | $1,557.50 |
| **TOTALS** | | 233 | $109,531.50 |

Thus, the amount requested in attorney's fees will compensate my law firm and the law firm of Boren, Osher & Luftman LLP for our collective lodestar.

19.    Ms. Mitchell and I kept contemporaneous records of our hours worked on this case by billing my time in increments of one tenth of an hour into my firm's timekeeping system.  I have access to that timekeeping system and I access it regularly for purposes of assessing the number of attorney and paralegal hours spent working on the various cases our law firm handles.  I relied on these contemporaneously-kept timekeeping records in order to prepare this motion for

BALTODANO DECLARATION ISO MOTION FOR FINAL SETTLEMENT APPROVAL, CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS

1   reasonable attorneys' fees.  My law firm has prepared an attorney time report

2   reflecting all of the total hours spent to date working on this case.  If requested by

3   the Court, I can readily make this report available to the Court for an in camera

4   review if the Court deems it necessary.  This report reflects all of my law firm's

5   hours worked on this case including, but not limited to:  pre-filing fact

6   investigation and legal research and analysis; interviewing the named plaintiffs;

7   performing on-going legal research and analysis regarding the certification of

8   claims in light of Dukes, Brinker, and Comcast; preparing to depose Defendants'

9   FRCP 30(b)(6) witnesses and restaurant managers, analysing Plaintiffs' payroll

10  and records of hours worked; travelling to Los Angeles to attend mediation;

11  discussing case strategy with the named plaintiffs on numerous occasions, both in-

12  person and via telephone; reviewing 5,411 pages of documents; reviewing and

13  analysing class-wide electronic and payroll data produced by Defendants;

14  preparing for mediation and attending mediation; negotiating and drafting the

15  proposed class action settlement; preparing the motions for preliminary and final

16  approval of class action settlement and related memoranda; monitoring the

17  settlement administration process including, but not limited to, the review,

18  analysis, and resolution of claim disputes and deficiencies; preparing this motion

19  for attorneys' fees, costs, and incentive payments; and preparing for and attending

20  the final approval hearing.

21          20.    To date, my law firm has incurred $5,020.02 in costs.  Attached hereto

22  as Exhibit A is a report reflecting these costs, which include legal research

23  expenses, copying costs, postage and federal express charges, and mileage and

24  travel expenses for mediation.  Moreover, and as set forth in the declaration of my

25  co-counsel, Paul K. Haines, the law firm of Boren, Osher & Luftman LLP, has

26  incurred approximately $14,616.24 in costs.  Therefore, our law firms have

27  collectively incurred $19,636.26 in costs.

28

BALTODANO DECLARATION ISO MOTION FOR FINAL SETTLEMENT APPROVAL, CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS

21.     I believe that my proposed hourly rate of $600 is reasonable in light of my skills, wage and hour class action litigation experience, reputation, fee awards to other attorneys of similar experience in the Central District of California, and the Laffey Matrix. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (lodestar should be based on using hourly rates that are "the prevailing market rates in the relevant community"). "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *See Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010).  Courts in this district have approved similar hourly rates for attorneys with similar experience as Class Counsel. *See, e.g., Gonzalez v. USF Reddaway, Inc.*, Case No. 5:10-CV-01514-AHM-OP (C.D. Cal. April 30, 2012) (approving hourly rate of $575 for an attorney with 10.8 years in practice in wage and hour class action settlement); *Castro v. UPS Ground Freight, Inc.*, Case No. CV 08-4898 ODW (CWx) (C.D. Cal. September 10, 2009) (approving hourly rate of $500 for 2003 law school graduate in wage and hour class action settlement for work performed in 2008); *Charlebois v. Angels Baseball LP*, Case No. SACV 10-0853 DOC (ANx), 2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) (in 2012, approving hourly rate of $450 for attorney with six years of experience for work performed in 2011); *Plows v. Rockwell Collins, Inc.*, Case No. SACV 10-1936 DOC (MANx) (C.D. Cal. August 6, 2012) (approving billable rate of $475 for 2004 law school graduate in wage and hour class action settlement for work performed in 2011).   As noted above, in paragraph 8, I have previously been approved in the Central District of California for an hourly rate of $600 for work performed in 2013 and 2014.

22.     My requested billable rate of $600 is also appropriate under the Laffey Matrix. *See Bond v. Ferguson Enterprises, Inc.*, Case No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 at *12 (E.D. Cal. June 30, 2011) ("One more general way to examine the reasonableness of hourly rates is to compare them to

1    the Laffey Matrix, a widely recognized compilation of attorney and paralegal rate

2    data used in the District of California, frequently used in fee award cases."). The

3    Laffey Matrix has been used in this district. *See, e.g., Fernandez v. Victoria Secret*

4    *Stores, LLC*, Case No. CV 06-04149 MMM (SHx), 2008 WL 8150856 at *14

5    (C.D. Cal. June 21, 2008) ("Here, it is plaintiffs who propose that the Laffey

6    matrix be used to approximate the lodestar. The court therefore accedes to their

7    request."). Attached hereto as Exhibit B is a true and accurate copy of the Laffey

8    Matrix that I pulled from the website, http://laffeymatrix.com/see.html, on October

9    10, 2014. According to the Laffey Matrix, for the period June 1, 2013, to May 31,

10   2014, the hourly rate is $175 for a paralegal, $320 for an attorney who is 1 to 3

11   years out of law school, $567 for an attorney who is 8 to 10 years out of law

12   school, and $640 for an attorney who is 11 to 19 years out of law school.

13        23.   As of the date this Motion was filed, no members of the Settlement

14   Class had filed an objection to the request for attorney's fees, costs, and incentive

15   payments.

16        24.   In addition to the legal and procedural challenges this lawsuit

17   presented, there were also other practical challenges. For example, there was a real

18   risk that I would not be compensated for my work because I handled this matter on

19   a purely contingent basis. Thus, Plaintiffs were not responsible for paying our

20   attorney's fees and we could only recover attorney's fees if Plaintiffs were

21   successful. By the time I attend the final approval hearing scheduled for

22   November 10, 2014, my co-counsel, Paul K. Haines, and I will have litigated this

23   case for over eighteen months with no payment while continuing to bear the risk of

24   non-payment if Plaintiffs were unsuccessful. Moreover, Mr. Haines and I

25   advanced all litigation costs on a contingency basis, which also carried risk

26   because our law firms would not recoup their costs in the event that Plaintiffs did

27   not prevail in this lawsuit.

28

14

BALTODANO DECLARATION ISO MOTION FOR FINAL SETTLEMENT APPROVAL, CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS

1          I declare under penalty of perjury under the laws of the United States that

2    the foregoing is true and correct.  Executed on October 10, 2014, at San Luis

3    Obispo, California.

4                            _/s/ Hernaldo J. Baltodano_____

5                              Hernaldo J. Baltodano

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BALTODANO DECLARATION ISO MOTION FOR FINAL SETTLEMENT APPROVAL, CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS

Exhibit A

Morawski v. AJ Spurs

## Baltodano Baltodano LLP
### Costs to Date

| Date | Memo | Account | Amount |
|---|---|---|---|
| 10/06/2014 | Photocopies | Photocopies | 559.62 |
| 04/11/2014 | Mediation brief to M. Rudy | Postage and Delivery | 27.49 |
| 04/15/2014 | Mediation | Travel Expenses | 328.92 |
| 10/06/2014 | Westlaw | Legal Research | 3,544.79 |
| 11/10/2014 | Final Approval Hearing | Mileage (Estimated) | 235.20 |
| 11/10/2014 | Parking at final approval hearing | Parking (Estimated) | 14.00 |
| 11/10/2014 | Final Approval Hearing | Travel Expenses (Estimated) | 275.00 |
| 04/15/2014 | Parking at mediation | Parking | 35.00 |
| 04/15/2014 | Mileage to/from mediation | Mileage | 235.20 |
| Total | | | 5,020.02 |

Exhibit B

# LAFFEY MATRIX






| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
|---|---|---|---|---|---|---|---|
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from

date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.