**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Phone: (805) 322-3412
Fax:     (805) 322-3413

**BOREN, OSHER & LUFTMAN**
Stephen Z. Boren (SBN 192024)
Email: sboren@bollaw.com
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
222 North Sepulveda Blvd., Suite 2222
El Segundo, California 90245
Tel: (310) 322-2220
Fax:(310) 322-2228

Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA ANN MORAWSKI and JOSE L. CORTEZ as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>A.J. SPURS RESTAURANT – SANTA MARIA, INC., a California Corporation; A.J. SPURS – BUELLTON, INC., a California Corporation; A.J. SPURS – TEMPLETON, INC., a California Corporation; MILT GUGGIA ENTERPRISES, INC., dba A.J. SPURS SALOON & DINING HALL, a California Corporation; and DOES 1 through 10,<br><br>Defendants | CASE NO. CV13-2349 AB (RZx)<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND COSTS, AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS**<br><br>Judge: Hon. André Birotte, Jr.<br>Date:   November 10, 2014<br>Time:  10:00 a.m.<br>Dept.:  790 |

NOTICE IS HEREBY GIVEN that on Monday, November 10, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 790 of the United States District Court for the Central District of California, located at located at 255 East Temple St., Los Angeles, California 90012-3332, before the Honorable André Birotte, Jr. , Class Counsel, Hernaldo J. Baltodano and Paul K. Haines, and Class Representatives Barbara Ann Morawski and Jose L. Cortez ("Plaintiffs") will and do hereby move this Court for an order awarding attorneys' fees and costs, and class representative incentive payments against  Defendants A.J. Spurs Restaurant – Santa Maria, Inc., A.J. Spurs – Buellton, Inc., A.J. Spurs – Templeton, Inc., and Milt Guggia Enterprises, Inc. ("Defendants").

Pursuant to the proposed class action settlement agreement, Class Counsel seek an award of attorneys' fees of $112,500 or 30% of the Maximum Settlement Amount, an award of $19,636.26 for reimbursement of costs, and incentive payments of $2,500 to each Plaintiff for compensation for their role in bringing and prosecuting this action and assisting Class Counsel.  Defendants do not oppose the requests for attorneys' fees and costs, and Plaintiffs' incentive payments.

This Motion is based upon the supporting Memorandum of Points and Authorities, the supporting Declarations of Hernaldo J. Baltodano, Paul K. Haines, Ani Shirinian, Barbara Ann Morawski, Jose Cortez, and exhibits attached thereto, and the pleadings, records, and files in this action.

Respectfully submitted,

Dated:  October 10, 2014          BALTODANO & BALTODANO LLP

By:  _____
Hernaldo J. Baltodano, Esq.
Attorneys for Plaintiffs, the Class and
Aggrieved Employees

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

# **TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................1

II.     RELEVANT PROCEDURAL HISTORY AND SUMMARY OF
        SETTLEMENT TERMS......................................................................2

    A.  Brief  Procedural History........................................................2

    B.  This Class Action Settlement Results in Significant Monetary Settlement
        Payments Given the Litigation Risks Involved................................3

III.    THE COURT SHOULD APPROVE THE FEE AWARD.....................4

    A.  The Attorney Fee Award Is Warranted Under California Law...............4

    B.  The Requested 30% Attorney Fee Award is Justified........................7

        1.  Class Counsel Obtained a Substantial Recovery for the Class...........7

        2.  Class Counsel's Efforts Support the Requested Fee Award.............10

        3.  Class Counsel's Experience and Skill Also Support the Fee Award...11

        4.  The Complexity of the Issues Also Support the Fee Award............11

        5.  The Risk of Non-Payment Existed at All Times........................12

        6.  The Reaction of the Settlement Class is Positive.......................13

        7.  Class Counsel's Lodestar Supports the Fee Award....................14

            a.  The Hours Expended on this Litigation are Reasonable.............14

            b.  The Requested Hourly Rates are Reasonable.......................17

IV.     PLAINTIFF'S LITIGATION EXPENSES ARE
        RECOVERABLE.............................................................................20

V.      THE INCENTIVE PAYMENT SHOULD BE
        APPROVED...................................................................................21

VI.     CONCLUSION...............................................................................22

i

# TABLE OF AUTHORITIES

## CASES

*21st Century Ins. Co. v. Superior Court*, 47 Cal.4th 511 (2009)................................ 5

*Adoma v. The University of Phoenix, Inc.*, 913 F. Supp. 2d 964

  (E.D. Cal. 2012)........................................................................................ 6, 12

*Aleman v. AirTouch Cellular*, 209 Cal.App.4th 556 (2012)...................................... 4

*Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314 (2005)......................................... 10

*Ashker v. Sayre*, Case No. 05–03759 CW, 2011 WL 825713

  (N.D. Cal. March 7, 2011)........................................................................... 20

*Baggett v. Gates*, 32 Cal.3d 128 (1982)........................................................... 5

*Barbosa v. Cargill Meat Solutions Corp.*, Case No. 1:11-cv-00275-SKD, 2013

  WL 3340939 (E.D. Cal. July 2, 2013)......……………………………………9, 13

*Barcia v. Contain-A-Way, Inc.*, Case No. 07cv938-IEG-JMA, 2009 WL 587844

  (S.D. Cal. Mar. 6, 2009) ............................................................................. 14

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................. 18

*Bond v. Ferguson Enterprises, Inc.*, Case No. 1:09-cv-1662 OWW MJS, 2011

  WL 2648879 (E.D. Cal. June 30, 2011)………………………………………18, 19

*Brinker Restaurant Corporation v. The Superior Court*,

  53 Cal.4th 1004 (2012)......................................................................... 12, 16

*Buchanan v. Homeservices Lending, LLC*, Case No. 11cv0922 L(MDD), 2013

  WL 1788579 (S.D. Cal. April 25, 2013) ........................................................ 8

*Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK

  (SSx) (C.D. Cal. November 2, 2011) ............................................................. 9

*Castro v. UPS Ground Freight, Inc.*, Case No. CV 08-4898 ODW (CWx)

  (C.D. Cal. September 10, 2009) .................................................................. 19

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986).......................... 17

*Charlebois v. Angels Baseball LP*, Case No. SACV 10-0853 DOC (ANx), 2012

  WL 2449849 (C.D. Cal. May 30, 2012).......................................................... 19

ii

1  *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43 (2008) .................................................. 6
2  *Cicero v. DirecTV, Inc.*, Case No. EDCV 07-1182, 2010 WL 2991486
3    (C.D. Cal. July 27, 2010)........................................................................................ 6
4  *City of Detroit v. Grinnel Corp.*, 495 F.2d 448 (2nd Cir. 1974)............................ 15
5  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013.................................................8, 16
6  *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008)......6, 7
7  *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1 (2007) ........... 5
8  *Fernandez v. Victoria Secret Stores, LLC*, Case No. CV 06-04149 MMM (SHx),
9    2008 WL 8150856 (C.D. Cal. July 21, 2008)...…………………………11, 15, 19
10 *Gentry v. Superior Court*, Cal.4th 455 (2007) ...................................................... 21
11 *Goldkorn v. County of San Bernardino*, Case No. EDCV 06-707-VAP (OPx), 2012
12    WL 476279 (C.D. Cal. February 13, 2012)........................................................ 14
13 *Gonzalez v. USF Reddaway, Inc.*, Case No. 5:10-CV-01514-AHM-OP
14    (C.D. Cal. April 30, 2012)..................................................................................... 19
15 *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (2004) ................................. 12
16 *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994).................................................. 20
17 *Hensley v. Eckerhart*, 461 U.S. 424 (1983)…………………………………..15, 16
18 *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935
19    (9th Cir. 2011) ......................................................................................................... 6
20 *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166
21    (S.D. Cal. 2007)..................................................................................................... 20
22 *In re Mediation Vision Tech. Sec. Litigation*, 913 F. Supp. 1362
23    (N.D. Cal. 1996) .................................................................................................... 21
24 *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985) ..................................... 16
25 *Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011). ........................................... 17
26 *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx)
27    (C.D. Cal. June 22, 2011) ....................................................................................... 9
28 *Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir. 1987) ........................... 7, 14

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011) ...... 21

*Ketchum v. Moses*, 24 Cal.4th 1122, (2001) ........................................................ 13

*Knight v. Red Door Salons, Inc.*, Case No. 08-01520 SC, 2009 WL 248367
  (N.D. Cal. Feb. 2, 2009) .................................................................................. 6

*Lemus v. Denny's Inc.*, Case No. 3:11-cv-02131-CAB-WVG, Document 35
  (S.D. Cal. Mar 21, 2013) ................................................................................ 8

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013).................10,12

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ....................................................................... 10

*McPhail v. First Command Fin. Planning, Inc.*, Case No. 05cv179-IEG-JMA,
  2009 WL 839841 (S.D. Cal. March 30, 2009).............................................. 14

*Moore v. Jas H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) ..................... 16

*Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx)
  (C.D. Cal. April 16, 2012)............................................................................... 9

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)........................ 17

*Murillo v. Pacific Gas & Elec. Co.*, Case No. CIV 2:08-1974 WBS GGH, 2010
  WL 2889728 (E.D. Cal. July 21, 2010)...................................................12, 13

*Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992)............. 7

*Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160 (C.D. Cal. 2010)............ 18

*Parks v. Eastwood Ins. Servs., Inc.*, Case No. SA CV 02-507-GLT (MLGx), 2005
  WL 6007833 (C.D. Cal. June 28, 2005)......................................................... 4

*Plows v. Rockwell Collins, Inc.*, Case No. SACV 10-1936 DOC (MANx)
  (C.D. Cal. August 6, 2012)............................................................................ 19

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)............................................. 6

*Press v. Lucky Stores*, 34 Cal.3d 311 (1983) ................................................... 5

*Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831...................................... 10

*Rodriguez v. D.M. Camp & Sons*, Case No. 1:09-cv-00700-AWI-JLT, 2013
  WL 2146927 (E.D. Cal. May 15, 2013).......................................................... 14

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ................................................ 4

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)....................... 22

*Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012
   WL 2117001 (E.D. Cal. June 11, 2012)...................................................9, 22

*Schwarz v. Sec'y of Health & Human Services*, 73 F.3d 895 (9th Cir. 1995)........ 18

*Serrano v. Priest*, 20 Cal.3d 25 (1977) ................................................................. 15

*Singer v. Becton Dickinson and Co.*, Case No. 08-CV-821-IEG (BLM)
   (S.D. Cal. December 9, 2009) ............................................................................ 22

*Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD
   (E.D. Cal. December 17, 2008) ........................................................................... 9

*Thieriot v. Celtic Ins. Co.*, Case No. C 10-04462 (LB), 2011 WL 1522385
   (N.D. Cal. April 21, 2011)................................................................................. 22

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) ........................................................................... 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................6, 7

*Wal-mart Stores, Inc. v. Dukes* 131 S. Ct. 2541 (2011)................................16

*Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-
   KSC, 2013 WL 4525428 (S.D. Cal. August 26, 2013) ...................................... 10

*Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009) ............... 4

*Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169 (6th Cir. 1990).............. 17

### STATUTES

California Code of Civil Procedure Section 1021.5 ................................................ 4

Code of Civil Procedure Section 1021.5.................................................................. 5

California Labor Code Section 90.5(a) ..................................................................... 5

California Labor Code Section 1194.........................................................................4

Fair Labor and Standards Act Section 216(b)..........................................................4

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

# OTHER AUTHORITIES

DLSE Opinion Letter No. 1990.09.18 ........................................................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

On July 8, 2014, this Court granted preliminary approval of this proposed class action settlement.  Now before the Court is Plaintiffs and Class Counsel's motion for an award of attorneys' fees, costs, and incentive payments.  Pursuant to the proposed class action settlement agreement, Class Counsel seeks an award of attorneys' fees of 30% of the Maximum Settlement Amount ("MSA") or $112,500, and reimbursement for verified costs of $19,636.26.   Plaintiffs also requests that the Court approve each of their requests for an incentive payment of $2,500 based on their efforts in bringing this action and assisting Class Counsel, their general release of claims, and the financial and reputational risk they assumed to vindicate their rights and those of their fellow settlement class members.  Defendants do not oppose this motion, and not a single class member filed an objection to the requested fees, costs, and incentive payments.

Class Counsel respectfully requests that the Court approve the request for $112,500 in attorneys' fees.  Although the request exceeds the 25% benchmark, the following evidence justifies an upward departure:  (1) the substantial recovery obtained for the settlement class in the face of hotly disputed claims; (2) Class counsel's efforts in diligently pressing the class claims; (3) Class counsel's skill and considerable wage and hour class action experience; (4) the complexity of the issues regarding the claims for unpaid wages; (5) the significant risk of non-payment due to Class Counsel taking this matter on a purely contingent basis; (6) not a single class member objected to the requested fees and costs; and (7) Class Counsel's lodestar mirrors the requested fee award.

///

///

///

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

## II.   RELEVANT PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT TERMS.

### A.   Brief Procedural History.

Plaintiffs filed their complaint on April 2, 2013 in the United States District Court for the Central District of California.  Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), ¶10.  On April 18, 2013 Plaintiffs filed a First Amended Complaint adding previously un-pled claims for meal period violations and failure to reimburse employees for necessary expenditures.  *Id.*  Defendants filed an Answer to the First Amended Complaint on August 23, 2013.  *Id.*  Shortly thereafter, counsel for the parties met and conferred regarding the bases of the claims and defenses and began discussing the possibility of private mediation.  Baltodano Decl., ¶10.  The parties reached an agreement to attend private mediation with Mark Rudy, an experienced and respected wage and hour class action mediator in California, and Defendants agreed to produce a representative sampling of payroll and timekeeping data in advance of mediation.  Baltodano Decl., ¶10.  Although mediation was originally scheduled for January 28, 2014, due to difficulties in collecting some of the timekeeping and payroll data, the parties agreed to continue the mediation date to April 15, 2014, and Defendants ultimately produced a sampling of payroll and timekeeping data for approximately 10% of the putative class, covering approximately 40% of the putative class period.  Baltodano Decl., ¶10.

In preparation for mediation, Plaintiffs retained a data analysis professional to analyse all of the payroll and timecard data produced by Defendants.  Baltodano Decl., ¶11.  Plaintiffs conducted a comprehensive analysis of the data, which included 4,718 shifts worked by 43 members of the Settlement Class.  *Id.*  Consequently, Plaintiffs were able to determine the average rate of pay, average number of regular-time and overtime hours worked, the number of shifts giving rise to meal and rest period violations, and the frequency and value of free or

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

discounted meals provided to non-exempt employees. *Id.* Using this data, Plaintiffs were able to estimate the total amount of alleged unpaid wages by extrapolating their findings to the entire Settlement Class. *Id.* During this time, Plaintiffs also analysed 5,411 pages of policies, work schedules, and payroll records produced by Defendants, and interviewed several putative class members to gauge the breadth of meal and rest period violations at Defendants' four restaurant locations. Baltodano Decl., ¶11.

The parties attended mediation with Mark Rudy in Los Angeles on April 15, 2014. Baltodano Decl., ¶12. After a full day of negotiations, Mr. Rudy made a mediator's proposal for a class-wide resolution of all claims, which both parties accepted. *Id.* The parties subsequently executed a Memorandum of Understanding outlining the essential terms of the proposed settlement. *Id.* On April 21, 2014, the parties advised the Court that they had reached a resolution and subsequently continued negotiating and drafting the long-form Settlement Agreement which was executed on June 10, 2014. *Id.* The Court granted preliminary approval on July 8, 2014. *See* DE No. 20.

### B.     This Class Action Settlement Results in Significant Monetary Settlement Payments Given the Litigation Risks Involved.

Defendants have agreed to pay a MSA of $375,000 to the settlement class. Baltodano Decl., ¶13. After deducting amounts for court-approved Plaintiff's incentive payments, costs of settlement administration, attorneys' fees and costs, and the PAGA payment to the CLWDA, the settlement requires Defendants to pay a Net Settlement Amount ("NSA") of up to $218,625 to all members of the Settlement Class who filed claims. *Id.*

Each settlement class member's projected recovery is based on the number of her/his workweeks worked during the putative class period. Baltodano Decl., ¶14. As of this date, the average settlement payment per valid claimant is

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

approximately $1,031.25 and the highest estimated settlement payment is approximately $2,787.35, which is substantial given the litigation risks involved. *Id.* These settlement payments are on par and exceed settlement payments in other judicially-approved wage and hour class settlements. *See* Section III.B.1, *infra*.

## III.   THE COURT SHOULD APPROVE THE FEE AWARD.

### A.   The Attorney Fee Award Is Warranted Under California Law.

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. Proc. 23(h). Because Plaintiffs pled California Labor Code claims, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. *See Rodriguez v. Disner*, 688 F.3d 645, 653 fn. 6 (9th Cir. 2012) ("If…we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees"); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("State law [also] establishes the required showing for attorney's fees in an action in diversity").

Here, Plaintiffs seek reasonable attorneys' fees and costs pursuant to several Labor Code statutes, including Labor Code Sections 1194, Section 216(b) of the FLSA, and Code of Civil Procedure Section 1021.5. *See* First Amended Complaint at ¶¶33, 40, and 75 and Prayer for Relief No. 15.   Labor Code Section 1194 is a one-way fee shifting statute and Code of Civil Procedure Section 1021.5 is a private attorney general statute. *See, e.g., Aleman v. AirTouch Cellular*, 209 Cal.App.4th 556, 582 (2012) ("A prevailing defendant cannot recover fees in an action under section 1194"); *Parks v. Eastwood Ins. Servs., Inc.*, Case No. SA CV 02-507-GLT (MLGx), 2005 WL 6007833 at *2-3 (C.D. Cal. June 28, 2005) (in hybrid FLSA-California state law action, plaintiff's counsel was entitled to attorney's fees under California Code of Civil Procedure Section 1021.5); *Press v.*

1   *Lucky Stores*, 34 Cal.3d 311, 317-318 (1983) ("The award of attorney fees is

2   proper under [CCP] section 1021.5 if (1) plaintiffs' action has resulted in the

3   enforcement of an important right affecting the public interest, (2) a significant

4   benefit, whether pecuniary or nonpecuniary, has been conferred on the general

5   public or a large class of persons and (3) the necessity and financial burden of

6   private enforcement are such as to make the award appropriate.") [internal

7   quotations omitted].[1]

8       Under California law, "[w]hen a number of persons are entitled in common

9   to a specific fund, and an action brought by a plaintiff . . . for the benefit of all

10  results in the creation  . . . of that fund, such plaintiff  . . . may be awarded

11  attorney's fees out of the fund." *See 21st Century Ins. Co. v. Superior Court*, 47

12  Cal.4th 511, 520 (2009).  In awarding attorneys' fees from a common fund, courts

13  have discretion to employ either the percentage-of-recovery method or the lodestar

14

15  method. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935,

16

---

17  [1] These factors are met here.  First, the "substantial recovery" of unpaid wages furthers "the
18  enforcement of an important right affecting the public interest" with respect to minimum labor
    standards concerning the payment of unpaid wages. *See, e.g.*, Cal. Labor Code § 90.5(a) ("It is
19  the policy of this state to vigorously enforce minimum labor standards in order to ensure
    employees are not required or permitted to work under substandard unlawful conditions or for
20  employers that have not secured the payment of compensation, and to protect employers who
    comply with the law from those who attempt to gain a competitive advantage at the expense of
21  their workers by failing to comply with minimum labor standards.").  Second, the relief obtained
    through the settlement confers a "significant benefit" on a "large class of persons." *See, e.g.,*
22  *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1, 16-17 (2007) (in class action
23  brought under California Labor Code, court held that attorney fee award was warranted because
    "Estrada's personal motivation does not diminish the fact that he pursued this public interest
24  class action not only for himself but on behalf of a class comprised of FedEx's past and present
    drivers and ultimately obtained awards for 209 drivers. [citations ommitted]  No more is required
25  to satisfy the 'significant benefit,' 'public interest,' and 'large class of persons' requirements of
26  [Code of Civil Procedure] section 1021.5.").  Third, and as explained in detail in Section III.B.7,
    *infra*, Class Counsel's lodestar establishes that "the necessity and financial burden of private
27  enforcement are such as to make the award appropriate" because the financial burden this suit
    placed on Plaintiffs was out of proportion to their personal stake in the case. *See Baggett v.*
28  *Gates*, 32 Cal.3d 128, 144 (1982).

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

1    942 (9th Cir. 2011); *see also Adoma v. The University of Phoenix, Inc.*, 913 F.

2    Supp. 2d 964, 981-982 (E.D. Cal. 2012) (applying percentage of recovery method

3    in wage and hour action alleging violations of Labor Code and FLSA).  Moreover,

4    courts utilizing the percentage-of-the fund approach can use a lodestar as a "cross-

5    check" on the reasonableness of the requested percentage award. *See Vizcaino v.*

6    *Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002), *but see Craft v. County*

7    *of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar

8    cross-check is not required in this circuit, and in some cases is not a useful

9    reference point.").

10        In the Ninth Circuit, the typical range of reasonable attorney's fees is 20 to

11   33.3 percent of the total settlement value, with 25% considered a benchmark

12   percentage. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Cicero v.*

13   *DirecTV, Inc.*, Case No. EDCV 07-1182, 2010 WL 2991486 at *6 (C.D. Cal. July

14   27, 2010) [and cases cited therein].  The percentage applied in a particular case,

15   however, depends on the facts of each case and "in most common fund cases, the

16   award exceeds that benchmark" percentage. *See Knight v. Red Door Salons, Inc.*,

17   Case No. 08-01520 SC, 2009 WL 248367 at *3 (N.D. Cal. Feb. 2, 2009); *see also*

18   *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 fn. 11 (2008) ("Empirical studies

19   show that, regardless whether the percentage method or the lodestar method is

20   used, fee awards in class actions average around one-third of the recovery")

21   [internal citation omitted].  Notably, "courts usually award attorneys' fees in the

22   30-40% range in wage and hour class actions that result in recovery of a common

23   fun under $10 million." *See Cicero, supra*, 2010 WL 2991486 at *6.

24        Here, Class Counsel seek an award of 30% of the common fund based on (1)

25   the substantial recovery obtained for the settlement class in the face of hotly

26   disputed claims; (2) Class counsel's efforts in diligently pressing the class claims

27   forward; (3) Class counsel's skill and considerable wage and hour class action

6

experience; (4) the complexity of the issues regarding the claims for unpaid wages; (5) the significant risk of non-payment due to Class Counsel taking this matter on a purely contingent basis; (6) the fact that not a single class member objected to the requested attorneys' fees and costs; and (7) because Class Counsel's lodestar mirrors the requested fee award. *See Craft, supra*, 624 F.Supp.2d at 1116-17 (C.D. Cal. 2008); *see also Vizcaino, supra*, 290 F.3d at 1048-1050 (in assessing whether percentage requested is fair and reasonable, courts generally consider the results achieved, the risk of litigation, the skill required, the quality of work performed, the contingent nature of the fee and the financial burden, and the awards made in similar cases); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (internal citations omitted) ("Indeed, "[a] strong presumption exists that the lodestar figure represents a reasonable fee."); *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1472 (9th Cir. 1992) (attorneys' fees calculated by the lodestar method are "presumptively reasonable").

   B.   **The Requested 30% Attorney Fee Award is Justified.**

   1.   **Class Counsel Obtained a Substantial Recovery for the Class.**

   Plaintiffs obtained a substantial recovery for the settlement class in the face of hotly disputed claims.  Indeed, Defendants raised numerous affirmative defenses.  Among other things, Defendants maintained that they properly calculated and paid all required overtime wages, and that the amount of overtime hours worked was miniscule, rendering any underpayment *de minimis*.  Defendants also maintained that they need not include the value of free or discounted meals in the regular rate of pay for overtime purposes, and that any failure to do so was inadvertent.  Defendants also claimed that they complied with all of their meal and rest period obligations, and that their time records would demonstrate that Plaintiffs and the putative class members were provided with the opportunity to take all meal and rest periods to which they were entitled.   In this regard,

7

Defendants asserted that they rolled out facially compliant rest period policies at some of their restaurants, and that Plaintiffs would face an uphill battle on certification since rest periods need not be recorded.  With respect to meal periods, Defendants asserted that the vast majority of shifts were less than six hours in length and, hence, meal periods could be voluntarily waived, irrespective of whether the meal period waiver policy language required advance notice for revocation.   Defendants also asserted that they need not reimburse non-exempt employees for required slip resistant shoes, since they are generally usable in the occupation.  *See, e.g.*, DLSE Opinion Letter No. 1990.09.18, p. 1 (stating that employee expenses for basic wardrobe items which are "usual and generally usable in the occupation" need not be reimbursed); *Lemus v. Denny's Inc.*, Case No. 3:11-cv-02131-CAB-WVG, Document 35 at p. 7 (S.D. Cal. Mar 21, 2013) (Stating that in addition to not being a reimbursable "uniform" item, state law was preempted by OSHA regulations and therefore, "under federal law, it is clear that [Defendant] does not have to reimburse Plaintiff for his slip-resistant shoes.).

Defendants also planned to vigorously oppose any contested motion for class certification on the grounds that individual questions of fact would still predominate over their alleged unlawful rounding practices in the wake of the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). According to Defendants, Plaintiffs could not certify any claims because proof of damages was too individualized. *See, e.g., Buchanan v. Homeservices Lending, LLC*, Case No. 11cv0922 L(MDD), 2013 WL 1788579 at *6 (S.D. Cal. April 25, 2013) (relying on *Comcast* and denying certification of Labor Code §§ 221 and 2802 claims).

Despite these obstacles, Plaintiffs secured a significant recovery for the settlement class.  As detailed in Plaintiffs' concurrently-filed Motion for Final Approval, this settlement compensates the class for their underpaid overtime wages

8
NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

1  and meal and rest period violations, and provides additional, tangible

2  compensation for hotly disputed penalty claims. Indeed, the average settlement

3  payment for members of the settlement class is $1,031.25, which is on par and also

4  exceeds average settlement payments in similar wage and hour class action

5  settlements. *See, e.g., Casique v. ValleyCrest Landscape Development, Inc.*, Case

6  No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final

7  approval of proposed class action settlement where average recovery to Settlement

8  Class members was estimated at $345); *Jaime v. Standard Parking Corp.*, Case

9  No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (granting final approval of

10  class action settlement based on average settlement class member recovery of

11  $462.22); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx)

12  (C.D. Cal. April 16, 2012) (granting final approval of settlement where average

13  Settlement Class member recovery was $561.58); *Sorenson v. PetSmart, Inc.,* Case

14  No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour

15  class action settlement approved where average class member recovery was

16  approximately $60)*; Barbosa v. Cargill Meat Solutions Corp.*, Case No. 1:11-cv-

17  00275-SKD, 2013 WL 3340939 at *11-13 (E.D. Cal. July 2, 2013) (wage and hour

18  class action settlement of $1,290,000 for 1,837 hourly employees yielded

19  maximum settlement payment of $922.29 and average settlement payment of

20  $601.91); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO,

21  2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class

22  Members will receive an average of approximately $198.70, with the highest

23  payment to a Class Member being $695.78. Plaintiff contends that this is a

24  substantial recovery where Defendant asserted compelling defenses to liability;

25  Plaintiff also notes several similar actions where the gross recoveries per class

26  member were less than $90 . . . Overall, the Court finds that the results achieved

27  are good"); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-

28

9

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of class action settlement where average recovery for each class member was approximately $108).

In light of the substantial recovery, Class Counsel has performed a valuable public service because "[p]ublic policy has long favored the full and prompt payment of wages due an employee… [w]ages are not ordinary debts….[B]ecause of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay promptly." *See Pressler v. Donald L. Bren Co.*, 32 Cal.3d 831, 837 (1982) (internal citations and quotations omitted). "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." *See Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 324 (2005). And given the relatively small individual amounts at issue, this settlement furthers public policy by using the class action procedure to provide redress to those individuals who would otherwise not be able to access the judicial system to recover their unpaid wages. As the Ninth Circuit recently stated in *Leyva v. Medline Industries, Inc.*, "In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims." 716 F.3d 510, 515 (9th Cir. 2013); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

## 2. **Class Counsel's Efforts Support the Requested Fee Award**.

As detailed above in Section II.A, *supra*, Class Counsel diligently litigated this case from the outset. Class Counsel submits that their efforts led to a

10

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

substantial recovery for the settlement class, particularly in this complex action involving hotly disputed claims, by positioning the case towards an early class-wide resolution.   For instance, Plaintiffs conducted fact investigation, legal research and analysis, met and conferred with Defendants regarding the scope of data needed for a class-wide mediation, and negotiated for an informal production of extensive class-wide data, allowing Plaintiff to analyze electronic payroll and timekeeping data for the Settlement Class before mediation.  Plaintiff was therefore able to create damage models to accurately estimate the amount of unpaid minimum and overtime wages, and penalties for wage statement and late payment violations, and civil penalties under PAGA.

3. **Class Counsel's Experience and Skill Also Support the Fee Award**.

Class Counsel possess significant wage and hour class action experience. *See* Section III.7.B.b, *infra*; *see also* DE No. 18-2 at 2:8-7:7, DE No. 18-1 at 1:8-6:25.  Collectively, Class Counsel bring two decades of plaintiff and defense-side wage and hour class action experience pertaining to claims alleging overtime, meal and rest period, and related wage statement and final payment violations. Baltodano Decl., ¶¶4-9; Declaration of Paul K. Haines ("Haines Decl."), ¶¶3-7. They have been certified as class counsel in numerous other cases. Baltodano Decl., ¶8; Haines Decl., ¶¶6-7.   Moreover, Class Counsel are respected by their colleagues, as evidenced by Mr. Baltodano's recognition as a Super Lawyer in the area of employment litigation among Southern California attorneys.  Baltodano Decl., ¶3.   "All class counsel are qualified, experienced, and skilled attorneys, who prosecuted this action effectively.  As a consequence, this factor weighs in favor of a generous fee award." *See Fernandez v. Victoria Secret Stores, LLC*, Case No. CV 06-04149 MMM (SHx), 2008 WL 8150856 at *12 (C.D. Cal. July 21, 2008).

4. **The Complexity of the Issues Also Support the Fee Award.**

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

This litigation involved complex and unsettled issues pertaining to liability regarding Defendants' overtime obligations under California law and the FLSA, as well as complex issues regarding the use of representative evidence, the imposition of penalties, and proving class-wide liability under *Brinker* and *Comcast*. Among other things, Defendants asserted that the claims were ill-suited for certification because of the purported predominance of individual liability and damage issues. Had Defendants prevailed on any motion for class certification or motion for decertification, it was unlikely that members of the settlement class would have individually pursued their claims. *See, Leyva, supra*, 716 F.3d at 515 ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.").

Because of the complexity of the issues in this case, Plaintiffs submit that the requested fee award is appropriate. *See, e.g., Murillo v. Pacific Gas & Elec. Co.*, Case No. CIV 2:08-1974 WBS GGH, 2010 WL 2889728 at *12 (E.D. Cal. July 21, 2010) (awarding multiplier of 1.5 because "This case contained multiple novel legal issues, including whether a payment of cash in lieu of health benefits needs to be included in the calculation of overtime under the FLSA"); *Adoma, supra*, 913 F. Supp. 2d at 983 ("It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts").

5. **The Risk of Non-Payment Existed At All Times.**

"A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 580 (2004). Here, Class Counsel took

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

1  this matter on a purely contingent basis and have litigated this case for over a year

2  on a purely contingent basis. Baltodano Decl., ¶22; Haines Decl., ¶__.  Not only

3  have Class Counsel rendered their services without any compensation, they have

4  advanced all costs. *See* Baltodano Decl., ¶24; Haines Decl., ¶15.  Thus, because

5  there was a real risk that they would not be compensated for their work, the

6  requested fee award is appropriate. *See Barbosa, supra,* 2013 WL 3340939 at *16

7  ("Like this case, where recovery is uncertain, an award of one-third of the

8  common fund as attorneys' fees has been found to be appropriate"); *Murillo,*

9  *supra,* 2010 WL 2889728 at *12 ("Fee enhancements in contingency cases exists

10 to compensate for the risk of loss inherent in such cases and create financial

11 incentives for attorneys to take cases to protect important rights and goals, such as

12 fair labor standards"); *Ketchum v. Moses,* 24 Cal.4th 1122, 1132-33 (2001) ("A

13 lawyer who both bears the risk of not being paid and provides legal services is not

14 receiving the fair market value of his work if he is only paid for the second of

15 these functions.  If he is paid no more, competent counsel will be reluctant to

16 accept fee award cases.") [internal citation omitted].

17 **6.    The Reaction of the Settlement Class Is Positive.**

18       Notice of this proposed settlement, including the amounts requested for

19 attorneys' fees, costs, and Plaintiff's incentive awards, was mailed to 362

20 settlement class members.  Not a single class member filed an objection to the

21 requested fee award. Baltodano Decl., ¶23; Declaration of Ani Shirinian

22 ("Shirinian Decl."), ¶19.  This factor also strongly supports the requested fee

23 award.  *See, e.g., Thieriot v. Celtic Ins. Co.,* Case No. C 10-04462 LB, 2011 WL

24 1522385 at *6 (N.D. Cal. April 21, 2011) ("The fact that no members of the 390–

25 person class objected to the proposed 33% fee award—which was also

26 communicated in the notice—supports an increase in the benchmark rate.");

27 *McPhail v. First Command Fin. Planning, Inc.,* Case No. 05cv179-IEG-JMA,

28

13

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

2009 WL 839841 at *6 (S.D. Cal. March 30, 2009) ("The presence of a small minority of objectors strongly supports a finding that the settlement is fair, reasonable, and adequate.").

Moreover, approximately 29% of the settlement class filed claims, a participation rate which significantly exceeds those typically found in wage and hour class action settlements requiring the submission of claim forms. *See, e.g., Barcia v. Contain-A-Way, Inc.*, Case No. 07cv938-IEG-JMA, 2009 WL 587844 at *5 (S.D. Cal. Mar. 6, 2009) (granting final approval of California class with 20% claims rate); *Rodriguez v. D.M. Camp & Sons*, Case No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927 at *4 (E.D. Cal. May 15, 2013) (granting final approval of California class with 15% claims rate); Shirinian Decl., ¶20.  This positive reaction to the proposed settlement therefore supports final approval.

**7.  Class Counsel's Lodestar Reflects a Reasonable Multiplier.**

Although the Court is not required to conduct a lodestar cross-check, Class Counsel's lodestar also supports the requested 30% fee award.  As detailed below, because Class Counsel's lodestar is approximately $109,531.50, the 30% requested fee award should be approved.  *See, e.g., Jordan, supra*, 815 F.2d 1258, 1262 (9th Cir. 1987) ("A strong presumption exists that the lodestar figure represents a reasonable fee"); *Goldkorn v. County of San Bernardino*, Case No. EDCV 06-707-VAP (OPx), 2012 WL 476279 at *10 (C.D. Cal. February 13, 2012) ("Here, Class counsel assert that the lodestar for their fees and costs amounts to $826,117.20. For purposes of final approval, the amount of $690,000.00 in attorneys' fees and costs agreed to in the Settlement appears reasonable in comparison to Plaintiffs' lodestar calculation.").

**a.  The hours expended on this litigation are reasonable.**

To determine the reasonableness of Class Counsel's requested fee award, the Court should determine "the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Referred to as the "lodestar method," the California Supreme Court in the seminal case of *Serrano v. Priest* described it as follows:

> The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.[2]

According to the United States Supreme Court, the Court should include in any fee award all hours which were "reasonable expended." *See Hensley, supra*, 461 U.S. at 433. Concurrently filed herewith are sworn declarations from Class Counsel, Hernaldo J. Baltodano and Paul K. Haines, attesting to (1) the experience and qualifications of the attorneys and paralegals who worked on this case, (2) those attorneys and paralegals' customary billing rates during this case, and (3) the hours reasonably expended by those attorneys and paralegals in prosecuting this case. *See Fernandez, supra,* 2008 WL 8150856 at *9, fn. 35. Here, Class Counsel will have incurred at least 233 hours of attorney and paralegal time on this case through final approval, reflecting a lodestar of $109,531.50. *See* Baltodano Decl., ¶¶17-19; Haines Decl., ¶¶9-10. "Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Barbosa, supra*, 2013 WL 3340939 at *19. Although "the lodestar cross-check can be performed with a less exhaustive cataloguing and review of counsel's hours," *see Fernandez, supra,* 2008 WL 8150856 at *14, fn. 35, Class Counsel have nonetheless prepared attorney and paralegal time reports reflecting all hours spent to date working on this case and, if

---

[2] *See Serrano v. Priest*, 20 Cal.3d 25, 48 n.23 (1977) (hereinafter "Serrano III"), citing *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 470 (2nd Cir. 1974).

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

1  the Court deems it necessary, Class Counsel can make these reports available to

2  the Court for an *in camera* review. Baltodano Decl., ¶19; Haines Decl., ¶10.

3       Class Counsel is entitled to be compensated for "every item of service

4  which, at the time rendered, would have been undertaken by a reasonable and

5  prudent lawyer to advance or protect his client's interest." *See Moore v. Jas H.*

6  *Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982); *see also Hensley, supra,* 461

7  U.S. at 431 (the appropriate number of hours includes all time "reasonably

8  expended in pursuit of the ultimate result achieved in the same manner that an

9  attorney traditionally is compensated by a fee-paying client for all the time

10 reasonably expended on the matter").  This includes the time spent preparing this

11 motion for attorneys' fees. *See, e.g., In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-

12 660 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have

13 uniformly held that time spent in establishing the entitlement to and amount of the

14 fee is compensable").

15      As set forth in Class Counsel's concurrently-filed declarations, Class

16 Counsel performed the following tasks, all of which were reasonably necessary in

17 litigating this case against Defendants: pre-filing fact investigation and legal

18 research and analysis; interviewing the named plaintiffs; performing on-going legal

19 research and analysis regarding the certification of claims in light of *Dukes,*

20 *Brinker,* and *Comcast*; analysing Plaintiffs' payroll and records of hours worked;

21 travelling to Los Angeles to attend mediation; discussing case strategy with the

22 named plaintiffs on numerous occasions, both in-person and via telephone;

23 reviewing 5,411 pages of documents; reviewing and analysing class-wide

24 electronic and payroll data produced by Defendants; preparing for mediation and

25 attending mediation; negotiating and drafting the proposed class action settlement;

26 preparing the motions for preliminary and final approval of class action settlement

27 and related memoranda; monitoring the settlement administration process

28 including, but not limited to, the review, analysis, and resolution of claim disputes

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

1  and deficiencies; preparing this motion for attorneys' fees, costs, and incentive

2  payments; and preparing for and attending the final approval hearing. *See*

3  Baltodano Decl., ¶19; Haines Decl., ¶10.

4         The hours worked on this care are reasonable because Class Counsel

5  believed the work to be "reasonably expended in pursuit of success at the point in

6  time when the work was performed." *See Wooldridge v. Marlene Industries Corp.*,

7  898 F.2d 1169, 1177 (6th Cir. 1990) ("The question is not whether a party

8  prevailed on a particular motion or whether in hindsight the time expenditure was

9  strictly necessary to obtain the relief achieved.  Rather, the standard is whether a

10  reasonable attorney would have believed the work to be reasonably expended in

11  pursuit of success at the point in time when the work was performed.").  Surely, an

12  opposite standard for determining "reasonableness" would put Class Counsel

13  counsel in the precarious position of constantly second-guessing litigation strategy

14  in a statutory fee case even though it would clearly be reasonable and in the best

15  interests of the client for counsel to pursue the same litigation strategy for a fee-

16  paying client. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th

17  Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency fee

18  cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the

19  result and the amount of the fee . . . the court should defer to the winning lawyer's

20  professional judgment [regarding hours]; after all, he won, and might not have, had

21  he been more of a slacker.").

## b. The Requested Hourly Rates are Reasonable.

22

23         To determine Class counsel's hourly rates, the Court should look to

24  prevailing rates in the community for similar work performed by attorneys of

25  comparable skill, experience, and reputation. *See Chalmers v. City of Los Angeles*,

26  796 F.2d 1205, 1210-1211 (9th Cir. 1986).   The Court can rely on its own

27  familiarity with the legal market in determining the prevailing rate for similar

28  work. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  The "relevant

17

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

1  community" is typically the community in which the district court sits. *See*

2  *Schwarz v. Sec'y of Health & Human Services*, 73 F.3d 895, 906 (9th Cir. 1995).

3  Here, Class Counsel's request for attorneys' fees using a lodestar cross-check is

4  based on the following hourly rates: $600 for 12-year attorney Hernaldo J.

5  Baltodano (Class of 2002), $500 for 8-year attorney Paul K. Haines (Class of

6  2006), and $320 for 2-year attorney Fletcher W. Schmidt (Class of 2012).  Class

7  Counsel also request a billable hourly rate of $175 for paralegals Alice W. Mitchell

8  and Aaron Clark.

9      Class Counsel submit that these hourly rates are reasonable because they

10  have previously been approved at these rates, because of their skill, wage and hour

11  class action experience and reputation, fee awards to other attorneys of similar

12  experience in the Central District of California, and the Laffey Matrix. *See Blum v.*

13  *Stenson*, 465 U.S. 886, 895 (1984) (lodestar should be based on using hourly rates

14  that are "the prevailing market rates in the relevant community").  "Courts may

15  find hourly rates reasonable based on evidence of other courts approving similar

16  rates or other attorneys engaged in similar litigation charging similar rates." *See*

17  *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010).

18      As detailed in Class Counsel's supporting declarations and the declarations

19  submitted in support of Plaintiffs' motion for preliminary approval, Paul K. Haines

20  has extensive wage and hour class action experience, having handled numerous

21  wage and hour class actions at the national law firms of Littler Mendelson and

22  Morgan Lewis & Bockius LLP. *See* Haines Decl., ¶¶2-5.  Hernaldo J. Baltodano

23  also has extensive wage and hour class action experience, having handled

24  numerous wage and hour class actions at the national law firm of Robins Kaplan

25  Miller & Ciresi LLP. *See* Baltodano Decl., ¶¶2-7.  Moreover, for nine years,

26  Thomson Reuters and Los Angeles Magazine recognized Mr. Baltodano as a Top

27  Young Attorney in Southern California in the annual Rising Star Edition of Super

28  Lawyer. Baltodano Decl., ¶3.  This is an honor awarded to no more than two and a

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

1  half percent of attorneys under the age of forty in Southern California each year.
2  *Id.*  In 2014, Thompson Reuters and Los Angeles Magazine recognized Mr.
3  Baltodano as a Southern California Super Lawyer in the practice of employment
4  litigation. *Id.*  This is an honor awarded to no more than five percent of all
5  attorneys in Southern California. *Id.*

6      Courts in this district have approved similar hourly rates for attorneys with
7  similar experience as Class Counsel. *See, e.g., Gonzalez v. USF Reddaway, Inc.*,
8  Case No. 5:10-CV-01514-AHM-OP (C.D. Cal. April 30, 2012) (approving hourly
9  rate of $575 for an attorney with 10.8 years in practice in wage and hour class
10 action settlement); *Castro v. UPS Ground Freight, Inc.*, Case No. CV 08-4898
11 ODW (CWx) (C.D. Cal. September 10, 2009) (approving hourly rate of $500 for
12 2003 law school graduate in wage and hour class action settlement for work
13 performed in 2008); *Charlebois v. Angels Baseball LP*, Case No. SACV 10-0853
14 DOC (ANx), 2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) (in 2012,
15 approving hourly rate of $450 for attorney with six years of experience for work
16 performed in 2011); *Plows v. Rockwell Collins, Inc.*, Case No. SACV 10-1936
17 DOC (MANx) (C.D. Cal. August 6, 2012) (approving billable rate of $475 for
18 2004 law school graduate in wage and hour class action settlement for work
19 performed in 2011).
20     Class Counsel's requested billable rates are also appropriate under the
21 Laffey Matrix.  "One more general way to examine the reasonableness of hourly
22 rates is to compare them to the Laffey Matrix, a widely recognized compilation of
23 attorney and paralegal rate data used in the District of California, frequently used
24 in fee award cases." *Bond v. Ferguson Enterprises, Inc.*, Case No. 1:09-cv-1662
25 OWW MJS, 2011 WL 2648879 at *12 (E.D. Cal. June 30, 2011).  The Laffey
26 Matrix has been used in this district. *See, e.g., Fernandez, supra,* 2008 WL
27 8150856 at *14 ("Here, it is plaintiffs who propose that the *Laffey* matrix be used
28 to approximate the lodestar.  The court therefore accedes to their request.").  In

1  *Bond, supra*, the Court noted that an attorney with 8 to 10 years of experience as of

2  2011 commanded a billable rate of $522 according to the Laffey Matrix. *See* 2011

3  WL 2648879 at *12.  According to the Laffey Matrix, for the period June 1, 2013,

4  to May 31, 2014, the hourly rate is $175 for a paralegal, $320 for an attorney who

5  is 1 to 3 years out of law school, $567 for an attorney who is 8 to 10 years out of

6  law school, and $640 for an attorney who is 11 to 19 years out of law school. *See*

7  Baltodano Decl., ¶21-22 and Exh. B attached thereto [Laffey Matrix].

8        For these reasons, Class Counsel respectfully request that the Court approve

9  the requested hourly rates of $600 for Hernaldo J. Baltodano, $500 for Paul K.

10  Haines, $320 for Fletcher W. Schmidt, and $175 for paralegals Alice W. Mitchell

11  and Aaron Clark.

12  **IV.    PLAINTIFF'S LITIGATION EXPENSES ARE RECOVERABLE.**

13        Class Counsel and Plaintiff also seek, and Defendants do not oppose, a

14  request for $20,000 in out-of-pocket costs incurred in litigating this matter.  Again,

15  not a single class member filed an objection to this settlement, including Class

16  Counsel's request for up to $20,000 for reimbursement of costs. Baltodano Decl.,

17  ¶23; Shirinian Decl., ¶19.  Class Counsel's collective out-of-pocket costs are

18  $19,636.26, and include filing fees, messenger fees, legal research expenses,

19  copying costs, mediation fees, postage, federal express charges, consultant expert

20  fees, mileage, and travel expenses for court hearings and mediation. *See* Baltodano

21  Decl., ¶20 and Exh. A attached thereto; Haines Decl., ¶11 and Exh. A attached

22  thereto.  The litigation expenses by Class Counsel were reasonably incurred.[3]

23  Thus, the Court should grant the request for costs.

24

25  _____

26  [3] *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-

27  pocket expenses that would normally be charged to a fee paying client"); *see also Ashker v. Sayre*, Case No. 05–03759 CW, 2011 WL 825713 at * 3 (N.D. Cal. March 7, 2011) ("The costs

28  of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare*

## V.   **THE INCENTIVE PAYMENTS SHOULD BE APPROVED.**

Class Counsel, on behalf of Class Representatives Morawski and Cortez, requests a $2,500 incentive payment for each named plaintiff.  Not a single class member filed an objection to this request. Baltodano Decl., ¶23; Shirinian Decl., ¶19.  In *Gentry v. Superior Court*, the California Supreme Court acknowledged that an employer's current employees are unlikely to seek legal redress, stating, "retaliation against employees for asserting statutory rights under the [California] Labor Code is widespread," and, thus, "fear of retaliation for individual suits against an employer is a justification for class certification in the area of employment litigation." *See* 42 Cal.4th 443, 460 (2007); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333 (2011) (recognizing that "fear of economic retaliation" can force employees "quietly to accept substandard conditions").   Indeed, "it is the intent of the Legislature in section 1194 that minimum wage and overtime laws should be enforced in part of private action brought by aggrieved employees." *See Gentry*, 42 Cal.4th at 455-56.

Here, Plaintiffs filed this class action lawsuit to enforce California and the FLSA's wage and hour laws through private enforcement. *See* Declaration of Barbara Morawski ("Morawski Decl."), ¶3;  Declaration of Jose Cortez ("Cortez Decl."), ¶3.  Plaintiffs assisted Class Counsel in prosecuting this case, and their efforts included gathering documents for use in this lawsuit, meeting with Class Counsel on numerous occasions, strategizing with Class Counsel, and communicating with Class Counsel about mediation. *See* Morawski Decl., ¶4; Cortez Decl., ¶4.  Plaintiffs also bore the financial and reputational risks

*Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-1259 (9th Cir. 2006) (legal research costs reimbursable); *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees, messenger and federal express costs reimbursable); *Marhoefer, supra*, 24 F.3d at 19 (postage expenses reimbursable); *In re Mediation Vision Tech. Sec. Litigation*, 913 F. Supp. 1362, 1371 (N.D. Cal. 1996) ("A filing fee or serving fee is unquestionably a necessary expense of every litigation").

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

associated with wage and hour class action litigation, and executed a general release of claims. *Id.*, ¶¶3 & 6.  Consequently, the Court may award an incentive payment to Plaintiffs "to compensate [the] class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see also Schiller, supra,* 2012 WL 2117001 at *23 (granting request for incentive payment based on class representative's efforts in assisting class counsel, class representative's general release of claim, and financial risk).

Moreover, the requested $5,000 in incentive payments is not excessive; the amount constitutes 1.3% of the $375,000 MSA. *See, e.g., Singer v. Becton Dickinson and Co.*, Case No. 08-CV-821-IEG (BLM) (S.D. Cal. December 9, 2009) (approving incentive payment constituting 2.5% of gross settlement fund); *Thieriot v. Celtic Ins. Co.*, Case No. C 10-04462 (LB), 2011 WL 1522385 (N.D. Cal. April 21, 2011) (approving incentive payment constituting 1.8% of gross settlement fund).  For these reasons, Class Counsel respectfully request that the Court grant the requested $2,500 incentive payment for each Plaintiff.

## VI. CONCLUSION.

Class Counsel respectfully request that the Court grant the requests of $112,500 for attorneys' fees, $19,636.26 for costs, and $2,500 enhancement award to each Class Representative.

Respectfully submitted,

Dated:  October 10, 2014          BALTODANO & BALTODANO LLP

By:  _____
                                  Hernaldo J. Baltodano, Esq.
                                  Attorneys for Plaintiffs, the Class and
                                  Aggrieved Employees

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS